Rich, Judge,
 

 delivered the opinion of the court:
 

 This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board (132 USPQ 471) dismissing the opposition of appellants (herein called “Singer”) to the registration by appellee of the word-mark AMERICAN BEAUTY on the Principal Register “for sewing machines and parts thereof and attachments therefor.”
 

 The sole ground of opposition asserted in this court is that AMERICAN BEAUTY is not registrable to appellee by reason of section 2(e)(2) of the Trademark Act of 1946 (15 U.S.C. 1052(e)(2)). The relevant portions of the statute read as follows:
 

 Sec. 2. Trademarks registrable on the ‘principal register
 

 No trademark by wbicb the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
 

 *******
 

 (e) consists of a mark which, * * *
 

 (2) when applied to the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them, * * *.
 

 The issue under this statute as formulated below, dealt with by the board, and apparently agreed upon by the parties is whether AMERICAN BEAUTY, when applied to applicant’s goods, is primarily
 
 geographically
 
 deceptively misdescriptive of those goods. This, of course, involves two separate matters: (1) whether the mark AMERICAN BEAUTY is geographically descriptive under the circumstances of its use on appellee’s goods and (2) the geographical origin of those goods. If the mark is an indication that the goods are of American
 
 [1]
 
 origin and the goods are in fact of foreign origin, then the mark is geographically misdescriptive. Misdescriptiveness of this character would, it seems to us, necessarily be deceptive.
 

 
 *1382
 

 The Origin of Appellee's Goods
 

 Testimony was taken which established the origin of the goods on which the mark AMERICAN BEAUTY had been applied by appellee. The board opinion states the essential facts, as to which there is no dispute, as follows:
 

 Applicant obtains the basic machine, which is the sewing machine head, and various other components such as the accessory box and instruction book which accompany the machine, from American distributors of Japanese-made products. Thereafter, applicant adds certain American-made parts such as the motor, the motor controller, belt and the cabinet and also applies the metal plate and/or decalcomanias which bear the term “AMERICAN BEAUTY” to the machine. The machines, when completely assembled, are clearly marked “Made in Japan” on the heads, and “Made in U.S.A.” on the motors thereof.
 

 In a footnote, the board stated that the trademark admittedly had not been used on attachments, contrary to the statement in the application.
 

 On the basis of these facts, we are of the opinion that the sewing machines, as articles of commerce, are of Japanese origin because the principal part of the completed article was made in Japan, namely the sewing machine head, which is the complete sewing machine except for its driving motor and supporting cabinet. Certainly one desirous of buying a sewing machine made in the United States would not accept such a machine.
 

 The Mark as a Description of Geographic Origin
 

 Two members of the board j oined in saying,
 

 While the term “American Beauty” may have overtones of a geographic nature, both the dictionary definition and common everyday meaning is that of a well-known rose. In view of all the foregoing, it is concluded that opposers have failed to establish that the term “American Beauty” is primarily geographically deceptively misdeseriptive within the meaning of Section 2(e) (2) of the Trademark Act.
 

 The third member of the board dissented, writing a lengthy opinion in which he said, on the above point,
 

 Unquestionably, the term “AMERICAN” standing alone is purely geographical. * * *. “AMERICAN BEAUTY”, moreover, has a meaning apart from that of a particular rose. “AMERICAN” is defined, inter alia, in Webster’s New International Dictionary, Second Edition (1947), as “of or pertaining to the United States of America”. “BEAUTY” is defined in the same dictionary as “a beautiful person or thing” and “a particular grace, feature, ornament, or excellence” and it is listed in the “American Thesaurus of Slang”, published by Thomas Y. Crowell Company (1947), as a synonym for something excellent. “AMERICAN BEAUTY”, therefore, also signifies an object of superior quality associated with or originating in the United States of America. Accordingly, it seems clear * * * its basic significance, unquestionably, is geographic in
 
 *1383
 
 that it would immediately suggest to the average purchaser that a product sold thereunder originates in or is made in the United States. As applied to applicant’s sewing machines which are made and assembled in Japan, “AMERICAN BEAUTY” is clearly geographically misdeseriptive.
 

 We are of the opinion that the dissenting member of the board, has taken the correct view of the matter. “AMERICAN BEAUTY” is. not a term having only a single “primary” meaning. No doubt one looking it np in the dictionary, as a specific definable term considered without regard to the context of its use, will find, as did the majority below, that it is the name of a specific rose. Viewed in a nursery catalog it would have that meaning. Even in that context, however, it has geographical significance, meaning a beautiful American rose. But the primary significance of the term may change with use and what it is depends upon where it is used and how one encounters it. Florenz Zeigfeld, the great showman of what has come to be known, for no clear reason, as the “roaring twenties,” the great “Glorifier of the American Girl,” brought into being what were popularly termed at the time his “long-stemmed American Beauties” which were not roses at all but show girls. And there was a strong geographical connotation in that expression. No doubt this was a play on words based on the preexisting name of a popular rose, but use of the term in a review of the Zeigfeld Follies would refer to Follies Girls, not roses, and that would there be its “primary” meaning. Not all of such meanings are to be found in dictionaries.
 

 The record shows that the words “AMERICAN BEAUTY” have been applied in large prominent type on the arm of sewing machine heads, the machines being advertised by literature and newspaper advertisements using expressions such as: “The American Beauty — the world’s most precious — Automatic Zig-Zag Sewing Machine”; “Compare the American Beauty With The Most Expensive Sewing Machines!”; the American Beauty “Needs No Attachments.” This advertising emanates from a Milwaukee, Wisconsin concern which operates in that city the “American Beauty Sewing Center.” In our judgment, the words “AMERICAN BEAUTY” convey the impression of a beautiful sewing machine made in America, this geographical connotation being “primary” under the circumstances of their use.
 

 Under the appellee’s circumstances of use, we believe the primary geographical connotation to be misdeseriptive when applied to sewing machines of Japanese origin, as we have held appellee’s machines to be. We so hold notwithstanding the fact that sufficiently diligent examination of fine print in some advertisements and on a label attached to the machines will advise one that the “AMERICAN BEAUTY” machine heads are in fact made in Japan. The mis-descriptiveness of the predominant, if not blatant, mark is not altered
 
 *1384
 
 by another and much less conspicuous notice on the machine correctly describing geographical origin. As above noted, we also feel that the misdescriptiveness under the circumstances of this case would necessarily be deceptive. It gives a false indication of geographical origin to that segment of the purchasing public which may be interested in the country of origin and in purchasing American-made goods and it is likely to deceive them.
 

 On the basis of the foregoing findings, it is evident that section 2 (e) (2) applies to the facts established in this case and prohibits registration of the mark. The case has one other aspect requiring our consideration.
 

 Singer's Right To Off ose Registration
 

 The applicant-appellee contends that Singer has not proved that it would be damaged by the registration. The factual situation underlying the question thus raised is unique. In broad outline it is as follows. Prior to World War II most of the household sewing machines sold in the United States were also made here. During the war American manufacturers were forced to discontinue production of sewing machines for home use and when the war was over were unable to meet the accumulated demand. In the early 1950’s imports began arriving to meet this demand and by reason of lower prices virtually eliminated the domestic sewing machine manufacturing industry, except for opposer. By 1959, in a total market of one and three quarter millions of sewing machines, over one million Japanese machines were sold in this country. Many American companies formerly manufacturing sewing machines domestically are now importing them, primarily from Japan, and Singer is almost the only domestic manufacturer, certainly the only one of consequence. Attempting to capitalize on whatever preference there may be among the purchasing public for machines of domestic manufacture, it has directed its advertising toward capturing the customers having such a preference by emphasizing that its sewing machines are made in America by American craftsmen. During a period of two or three years it spent an estimated million dollars on advertising featuring the fact of American manufacture.
 

 It is clear that Singer competes with appellee for the domestic sewing machine market. Quite apart from a number of irrelevant matters considered below on this phase of the case, we think that as ¡such a competitor, emphasizing truthfully the fact of the American •manufacture of its product, Singer clearly has standing to oppose the registration to appellee of “AMERICAN BEAUTY” as a trademark for sewing machines of Japanese manufacture on the statutory
 
 *1385
 
 ground that the mark as used by appellee is primarily geographically deceptively misdescriptive. That statutory prohibition being sustained — as we are sustaining it — Singer clearly has a sufficient interest to be permitted to oppose and is not an intermeddler. In
 
 DeWalt, Inc.
 
 v.
 
 Magna Power Tool Corp.,
 
 48 CCPA 909, 289 F. 2d 656, 129 USPQ 275, at CCPA p. 918, we pointed out that “damage” will be presumed or inferred when the mark sought to be registered is
 
 descriptive
 
 of the goods of the opposer and the opposer is one who has an interest in using the descriptive term in its business, collecting a number of cases supporting the point. We also pointed to a number of cases which indicate that the reason for presuming damage is potential interference with opposer’s rights predicated on the statutory rights flowing from registration. In the present case, granting the •registration sought by appellee would create, under section 7 (b) of the statute, appellee’s prima facie right to use the mark “AMERICAN BEAUTY” on sewing machines shown to be of foreign manufacture. We believe that appellee is not entitled to such right and we can imagine no one in a more appropriate position to raise the question than Singer. The continuing
 
 use
 
 of “AMERICAN BEAUTY” by appellee in the manner disclosed by the record is very likely to damage Singer by bringing about the sale of Japanese-made machines to those who, if not deceived as to their origin, would, instead, purchase a Singer machine. It follows that a registration which would secure' and bolster up the 'continuing right to use the geographically mis-descriptive mark on Japanese machines, or machines of other foreign manufacture, would damage Singer.
 

 For some reason the majority below seems to have been of the view that it was incumbent on Singer to prove the existence of a
 
 general
 
 preference on the part of American sewing machine purchasers for machines of domestic manufacture, which proof was found to be lacking, and the fact that a million Japanese machines had been purchased by the American public was apparently considered to be of some significance on the issue we are here discussing. We see no such significance.
 

 In nothing we have said do we mean to disparage Japanese sewing machines. But it cannot be denied, and it scarcely requires proof to show, that many purchasers of many articles desire to buy those of American manufacture, perhaps only for reasons personal to themselves. The majority below, on the basis of the record, said, “it may well be true that some segment of the American public prefers sewing machines of American manufacture to Japanese machines.” We think that nothing more is required. That segment is entitled to buy according to its prejudices and preferences without the dan
 
 *1386
 
 ger of being deceived or confused by geographically misdescriptive marks. We suppose that recognition of that right is [3] the reason for section 2(e) (2); and being in the statute it should be enforced at the instigation of anyone having a real interest in its enforcement without undue concern over just what the nature of the damage might, in future, be from granting the registration. Such “damage” is always speculative and not often subject to precise proof.
 

 The decision of the board is
 
 reversed
 
 and the opposition is sustained.
 

 [1]
 

 We shall assume “American” to refer to the United States, which Is one of its recognized meanings. There is no need in this case to consider any other possible meaning since the only other country involved is Japan.