51 CCPA

**GOLDEN GATE SALAMI COMPANY, Appellant,**

v.

**GULF STATES PAPER CORPORATION, Appellee.**

**Patent Appeal No. 7167.**

United States Court of Customs and Patent Appeals.

May 28, 1964.

William G. MacKay, San Francisco, Calif., (Charles R. Allen, Jr., Washington, D. C., of counsel), for appellant.

Raphael Semmes, Washington, D. C., (G. Mallet Prevost, Washington, D. C., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board brought by appellant-registrant.

Appellant is the owner of the Supplemental Registration [1] of the mark

for packaged luncheon meats in a cellophane tear open package.

Appellee is the owner of the registered marks E–Z,[2] E–Z OPENER,[3] E–Z PAK,[4] E–Z CARI,[5] and E–Z LOAD [6] for paper bags and the mark E–Z WRAP for kraft wrapping paper.[7] There is testimony that appellee is a closely-held family managed corporation, whose corporate image has grown in the last 75 years to the extent that it is now recognized as a dominant and outstanding corporation in the pulp and paper industries. Roughly one out of every five grocery bags used in the United States today is said to be manufactured in appellee's plant. Besides paper bags, the record shows that appellee manufactures and sells paperboard containers for a wide variety of food products, a broad line of wrapping paper and butcher's paper and bleached sulfate pulp board. The record further shows that appellee has recently begun the manufacturing and the distribution of folding paper cartons made from

---

1. Reg. No. 682,704, issued July 28, 1959.

2. Reg. No. 227,085, issued Apr. 26, 1927 to a predecessor; renewed.

3. Reg. No. 575,332, issued June 2, 1953 on the Supplemental Register; Reg. No. 593,-737, issued Aug. 17, 1954; and Reg. No. 678,900, issued May 19, 1959.

4. Reg. No. 625,877, issued Apr. 24, 1956.

5. Reg. No. 629,101, issued June 19, 1956.

6. Reg. No. 631,342, issued July 24, 1956.

7. Reg. No. 674,206, issued Feb. 17, 1959.

bleached sulfate board and has entered the fine paper market, i. e., mimeograph, duplicator, and bond papers. Trademarks employed in identifying appellee's additional products are E–Z DUPLICATOR, E–Z MIMEOGRAPH, E–Z FOODPAK, E–Z TRAYPAK, E–Z MEAT BOARD, E–Z KART–N–PAK, E–Z LOAD, SOFTWOOD E–Z PULP, HARDWOOD E–Z PULP, E–Z OPEN, WHITE GUM E–Z PULP and E–Z FREZ. In addition, appellee also has used E–Z PAK for bleached folding cartons.

Appellee filed a petition to cancel the Supplemental Registration of the mark of appellant-respondent on the basis that the registration of that mark "under the Act of 1946" is specifically barred by Section 2(d) of the Act, inasmuch as said mark so resembles the registered marks of appellee-petitioner "as to be likely to cause confusion or mistake or to deceive purchasers."

In dismissing appellee's petition to cancel, from which no appeal has been filed by appellee-petitioner, a majority of the board stated:

> While petitioner has used a number of trademarks comprising the notation 'E–Z' in connection with its various paper and paperboard products, there is nothing in petitioner's record which would indicate that such use has created or resulted in purchaser recognition that petitioner possesses a 'family of marks' characterized by this term; and the third party registrations made of record by respondent appear to negate such claim. * * * Nevertheless, petitioner's record is sufficient to establish prior and continuous use of its registered trademarks, including the marks 'E–Z PAK' and 'E–Z OPENER', which are substantially similar to respondent's mark 'E–Z OPEN PAK'. Accordingly, the question to be determined in resolving the issue of likelihood of confusion raised by the pleadings is whether or not the goods of the parties are of such nature that their sale under the marks 'E–Z PAK and 'E–Z OPENER' on the one hand and 'E–Z OPEN PAK' on the other is likely to cause confusion in trade. (7) [8]

> \* \* \* \* \* \*

> "It is apparent from respondent's container, as urged by petitioner, that the registered mark 'E–Z OPEN PAK', as used thereon, serves to identify the container rather than the luncheon meats sold by respondent. The issue involved in a proceeding of this character, however, is whether or not petitioner is damaged by the registration in question and not by the manner in which the registered mark may be used by respondent. Thus, the question of likelihood of confusion and resultant damage to petitioner must be decided on the basis of the goods as identified in the registration sought to be canceled. In this regard, although reference is made in the registration to a cellophane tear open package, the goods for which registration was sought and for which the registration was granted are packaged luncheon meats. These goods and petitioner's paper bags and/or paperboard containers are vastly different products, and in the absence of any evidence that petitioner has advertised or promoted its goods to the ultimate consumer who is the purchaser of respondent's meats or that the average consumer purchasing food products in retail outlets utilizing petitioner's products is familiar with the marks appearing on the paper bags or containers, it is our opinion that there is no reasonable likelihood of con-

8. In its footnote (7), the board stated:
   "Since petitioner's record fails to show that it adopted and made use of the marks 'E–Z MEAT BOARD', 'E–Z FOODPAK', 'E–Z TRAYPAK' and 'E–Z KART-N-PAK' at or prior to the filing date of respondent's application for registration, they may not properly be considered herein in determining this question."

fusion as to the source of these goods merely because of the substantially similar marks under which they are marketed. Petitioner cannot therefore be damaged by the registration in question." [9]

The majority of the board, however, after dismissing appellee's petition to cancel, stated:

"The record, however, raises an ex parte question as to respondent's right to maintain this registration. As indicated above, there is little doubt in our minds in view of the nature of the term 'E–Z OPEN PAK' and the manner in which it is used on respondent's containers that the association of 'E–Z OPEN PAK' is with the container rather than with the meat products packaged therein. *Under such circumstances, respondent was not entitled to register the mark 'E–Z OPEN PAK' for its meat products at the time it made application therefor.* Furthermore, had respondent sought to register 'E–Z OPEN PAK' for a cellophane tear open package, such registration would have been precluded under Section 2(d) of the Statute by petitioner's registrations 'E–Z PAK' and 'E–Z OPENER' because paper bags and/or paperboard cartons and cellophane packages are products which may well be sold through the same trade channels to the same classes of purchasers; and while respondent's mark 'E–Z OPEN PAK' and petitioner's marks 'E–Z PAK' and 'E–Z OPENER' are highly suggestive terms they are nevertheless substantially similar. * * *" [Emphasis ours.]

Relying on Section 24 (15 U.S.C. § 1092 [10] ) of the Trademark Act of 1946, the majority of the board then concluded that since it has been found after a hearing before the board that appellant-respondent was not entitled to register its mark in issue at the time of its application for registration thereof, the Supplemental Registration No. 682,704 of such mark "will be canceled in due course."

Appellant-respondent urges that the "ex parte" ruling of the board, based on "an arbitrary interpretation of the meaning of one sentence in Section 24," was improper because there was no hearing involving the propriety of the issuance of the registration. It is urged that "there is no evidence to indicate, or even to suggest, that the term E–Z OPEN PAK is being used or has ever been used adversely or by anyone else in connection with packaged meats or related products." Appellant-respondent further argues that the board in its "ex parte" ruling disregarded a recognized practice and custom. It is contended that in the United States it has become a common practice in business not only to employ

9. A dissenting member of the board would grant appellee's petition to cancel appellant's registration on the basis that persons familiar with appellee's marks, upon seeing appellant's mark affixed to the package or carton containing meat, would reasonably assume that such container either originates with or is in some way connected with appellee-petitioner.

10. 15 U.S.C. § 1092 of the Trademark Act of 1946 as amended by par. (d) of Public Law 85–609, approved August 8, 1958, reads:

"§ 1092. Publication; not subject to opposition; cancellation

"Marks for the supplemental register shall not be published for or be subject to opposition, but shall be published on registration in the Official Gazette of the Patent Office. Whenever any person believes that he is or will be damaged by the registration of a mark on this register he may at any time, upon payment of the prescribed fee and the filing of a verified petition stating the ground therefor, apply to the Commissioner to cancel such registration. The Commissioner shall refer such application to the Trademark Trial and Appeal Board which shall give notice thereof to the registrant. *If it is found after a hearing before the Board that the registrant was not entitled to register the mark at the time of his application for registration thereof, or that the mark is not used by the registrant or has been abandoned, the registration shall be canceled by the Commissioner.* [Emphasis ours.]"

and utilize a plurality of trademarks on a single label, but in addition to use suggestive or descriptive subordinate trademarks usually to indicate some attractive fact as to the product or the package.

Appellee-petitioner argues that, in view of the nature of the term E–Z OPEN PAK and the manner in which it is used on the containers of appellant-respondent, the association of E–Z OPEN PAK is with the container rather than with the meat products packaged therein. Appellee-petitioner further contends that in view of its prior use of the trademarks E–Z OPENER and E–Z PAK, the registration of "E–Z OPEN PAK should never have been granted" to appellant-respondent and that the board was clearly justified in canceling it and that accordingly its "ex parte" ruling should be sustained.

These facts present two matters to this court. The first relates to the action of the majority of the board in dismissing appellee's petition to cancel the trademark, E–Z OPEN PAK within an arrow design, of appellant-respondent registered on the Supplemental Register. The second involves the board's decision, on what it designated as an "ex parte" question, wherein it ruled that the trademark of appellant-respondent should be canceled.

With reference to the dismissal of the petition, that phase of the controversy was not appealed by the appellee-petitioner whose petition was dismissed and thus is not before us for determination on the merits. Therefore, we will not, because we cannot, disturb the board's decision as to dismissal. However, we would agree with that dismissal if the matter had been properly presented to us since we do not think there would be any likelihood of confusion, mistake or deception as a result of the use by appellee-petitioner of its trademarks for its goods and the use by appellant-respondent of E–Z OPEN PAK within an arrow design for its packaged luncheon meat in a cellophane tear open package.

■ We would not agree with the board's statement that "The issue involved in a proceeding of this character, however, is whether or not *petitioner is damaged* by the registration in question." [Emphasis ours.] The standing of the appellee-petitioner to maintain a cancellation proceeding in the Patent Office stems from the language of section 24: "Whenever any person believes that he is or will be damaged by the registration * * * he may * * * apply to the Commissioner to cancel such registration." Similar language appears in sections 13 and 14 with respect to the opposition to or cancellation of registrations on the Principal Register.

There would seem to be a very real difference between a statutory provision referring to a *belief* in damage, which is all we have, and a provision requiring *proof* of damage, which we do not have. In sustaining an opposition in Singer Manufacturing Co., et al. v. Birginal-Bigsby Corp., 319 F.2d 273, 50 CCPA 1380, this court recently said:

"Such 'damage' is always speculative and not often subject to precise proof."

We also said there that the provision of section 2(e) (2) should be enforced at the instigation "of anyone having a real interest in its enforcement," by which we meant a personal commercial interest rather than the interest of a mere intermeddler.

■ Coming now to the second matter, we are of the opinion that the board was in error in finding that appellant-respondent was "not entitled to register the mark 'E–Z OPEN PAK' " on the basis "that the association of 'E–Z OPEN PAK' is with the container rather than with the meat products packaged therein" in view of "the nature of the term 'E–Z OPEN PAK' and the manner in which it is used on respondent's containers." As stated above, we do not think there is a likelihood of confusion as a result of use by appellee-petitioner of its trademarks and the use by appellant-respondent of its trademark. Furthermore, the marks of appellant-respondent have not been registered for "meat prod-

ucts" but for "Packaged Luncheon Meats In A Cellophane Tear Open Package."

■ Moreover, we are of the opinion that the board *exceeded* its statutory authority under section 24 in giving an "ex parte" consideration to the question of cancellation of the mark of appellant-respondent. The board apparently considers, however, that section 24 of the Trademark Act provides authority for making an "ex parte" ruling in an inter partes proceeding involving a cancellation. The board in its decision on request for reconsideration stated:

> " * * * it is apparent that the Statute provides ample authority for the Board's action [under Section 24]; and this is not the only instance in which such authority has been similarly exercised by a Patent Office tribunal as evidenced by Mackie-Lovejoy Mfg. Co. v. Birnbaum, 102 USPQ 38 (Comr., 1954); Pease Woodwork Company, Inc. v. Ready Hung Door Company, Inc., 103 USPQ 240 (Comr., 1954); Feldman v. Hoenig Plywood Corporation, 109 USPQ 63 (Comr., 1956); Hans Holterbosch, Inc. v. Rheingauer Schaumweinfabrik Schierstein, 110 USPQ 543 (Comr., 1956); and Miller Shoe Co., Inc., v. Vaisey-Bristol Shoe Company Incorporated, 116 USPQ 160 (Comr., 1958)."

We do not think that the Mackie-Lovejoy case, the Feldman case, the Holterbosch case or the Miller Shoe case offer any precedent for the board's "ex parte" consideration as to the cancellation of the mark of appellant-respondent.

In the Mackie case, petitioner filed a petition to cancel two registrations on the Supplemental Register. The Examiner of Interferences sustained the petition and respondent-registrant appealed to the Commissioner. The Assistant Commissioner did *not* dismiss the petition, as the board has done here, but affirmed the decision of the Examiner of Interferences. The affirmance, however, was not on the examiner's basis that the evidence showed that the purchasing public was likely to believe that the goods involved in the proceeding emanated from a single source but rather, referring to section 24 of the Trademark Act of 1946,[11] on the basis that it was clearly apparent from the record that respondent did not own the marks and was, therefore, not entitled to register the marks at the time of its application to register. The Assistant Commissioner considered that this was a "matter in issue" with which the Examiner of Interferences did not deal. It is not clear from the decision just how that matter got in issue but in any event it was not treated on an "ex parte" basis.

The Feldman case dealt with a petition to cancel a registration on the *Principal Register* and concerned petitioner's failure to discharge his presumed burden to prove facts from which it could be concluded that it was, or was likely to be, damaged. Such issues are not before us here.

The Miller Shoe case concerned a petition to cancel a respondent's mark on the Supplemental Register apparently on the basis that the Examiner of Trademarks had failed to cite an earlier registration of petitioner in respondent's registration proceedings. Petitioner moved for summary judgment and the Examiner of Interferences denied the motion. On appeal to the Commissioner, the Assistant

11. Section 24 of the Trademark Act of 1946 read:

"Sec. 24. Marks for the supplemental register shall not be published for or be subject to opposition, but shall be published on registration in the Official Gazette of the Patent Office. Whenever any person believes that he is or will be damaged by the registration of a mark on this register he may at any time apply to the Commissioner to cancel such registration. The Commissioner shall refer such application to the examiner in charge of interferences, who shall give notice thereof to the registrant. If it is found after a hearing before the examiner that the registrant was not entitled to register the mark at the time of his application for registration thereof, or that the mark is not used by the registrant or has been abandoned, the registration shall be canceled by the Commissioner."

Commissioner, referring to section 24 of the Trademark Act, granted petitioner's motion on the basis that from a mere inspection of the registrant's mark and petitioner's earlier registration, the registrant was not entitled to register its mark. Certainly this case is no authority for the board taking an "ex parte" action in the factual situation before us.

The only case cited which we find is not clearly distinguishable from the present case is the Pease case. There the Assistant Commissioner, although dismissing the petition to cancel a registration on the Supplemental Register for the reason that the petitioner "failed to establish the allegations of its petition," stated that the registration should be canceled on the basis that the record and testimony of the cancellation proceedings showed (1) that the registrant had never used the mark nor had any use of the mark by others under license inured to the registrant's benefit, (2) that information material to the question of use and ownership was withheld from the Patent Office at the time of registration, and (3) that the mark as applied to the designated goods was "merely an apt description" of them.

██ To the extent that the Assistant Commissioner in that case, and the board in the instant case, make an "ex parte" ruling, we believe they exceeded their statutory authority under section 24. We do not think it was the intent of Congress under section 24 to give the board authority to make, in an inter partes proceeding, an "ex parte" determination whether a registration in issue should be canceled. As indicated by its title, section 24 is directed to a cancellation proceeding, which is an inter partes proceeding. We think that section authorizes cancellation only in connection with such inter partes proceeding; and that when the record made by a petitioner for cancellation establishes facts showing the registration was granted in error, the petition to cancel should be granted inter partes and the inter partes proceeding should remain inter partes. Otherwise

very confused procedural situations arise as seen here where, although the petition of appellee-petitioner to cancel was dismissed appellee-petitioner achieved its desired result by reason of the board's "ex parte" decision to cancel. Appellee-petitioner took no appeal, apparently not concerned on what *basis* it prevailed in the proceeding. Appellant-respondent appealed but its appeal was necessarily from the "ex parte" action.

A so-called ex parte proceeding involves only one party and the Patent Office (so it is really a two-party proceeding) and in an appeal to us in such a proceeding the Patent Office normally appears by its Solicitor. It did not do so in this case, apparently because the case still bears an inter partes title and is so docketed in the Patent Office records, coming to us as an appeal *in* Cancellation No. 7,604, which it really is not because of the erroneous action of the board.

At the hearing we inquired of counsel for Gulf States Paper Corporation, the appellee-petitioner, just what he was doing here in an ex parte case. He said he was mystified; that he had inquired several times of the Patent Office what he should do and was told that this is an inter partes case. He therefore appeared here in order to represent his client's interest—which happened to coincide with the board's position in making an "ex parte" decision to cancel.

The position of appellant-respondent at the argument was that he resented the board going on an "ex parte frolic." He characterized the situation as unusual.

All the Trademark Trial and Appeal Board needed to do to avoid such confusion was to decide the issues raised in the cancellation proceeding and then stop, *refraining also from calling any decisions made in the inter partes proceeding, as a result of the record developed therein,* "ex parte," a practice we have previously criticized. See Gillette Co. v. Kempel, 254 F.2d 402, 45 CCPA 920; Roger & Gallet v. Janmarie, Inc., 263 F.2d 350, 46 CCPA 787.

When a petitioner to cancel brings forth facts which convince the Patent Office that a registration should be canceled, there would seem to be no legal necessity for doing what was done here—first dismiss the petitioner for lack of standing and then sustain his petition, in effect, in the form of an "ex parte" decision made in the theoretical absence of the real party in interest. Legal technicalities should be pursued only in the interest of orderly procedure and applied only where they serve that end.

In summary, we think that appellant-respondent is entitled to retain its registration. The appeal here is from a decision of the board reading: "Registration No. 682,704 will be canceled in due course." That decision was rendered "ex parte" after termination of proceedings in an inter partes cancellation proceeding in which no appeal was taken. Since we hold the "ex parte" decision was taken without authority it is hereby *vacated*. The initial decision of the board reading "The petition to cancel is therefore dismissed" is left standing by failure of the appellee-petitioner to appeal from it.

Vacated.

ALMOND, Judge (dissenting, with whom WORLEY, Chief Judge, joins).

I am unable to agree with my associates that "we do not think there is any likelihood of confusion, mistake or deception as a result of the use by appellee-petitioner of its trademarks for its goods and the use by appellant-respondent of E–Z OPEN PAK within an arrow design for its packaged luncheon meat in a cellophane tear open package." It seems perfectly clear to me that the average housewife scanning a display of packaged luncheon meats would be likely to be confused as to the source or origin of goods bearing the marks E–Z OPEN PAK, on the one hand, and E–Z OPENER or E–Z PAK, on the other.

It is true that the majority purports not to decide this question because appellee did not appeal. However, the opinion states there is no likelihood of confusion and predicates both of the "two matters" presented to the court on this finding.

It appears to me that the decision sets forth circuitous and hypertechnical reasons for the result obtained. The trademark laws should not be interpreted to establish an entangling administrative morass in which an owner of at least 18 trademarks for paper products is unable to prevail because the wrong tribunal decided in his favor for the wrong reasons. The decision of the majority interrupts the family of marks appellee has been seeking to build over nearly forty years by permitting registration of an "E–Z" mark for packaged goods. The reason the strong family of appellee's marks is broken is that he did not appeal a decision directing cancellation of E–Z OPEN PAK. Since cancellation is precisely what he sought, I see no reason why he should be required to bear the enormous expense of appealing. The majority of this court decrees that his petition to cancel is dismissed because the board, although agreeing that the registration should be canceled, predicated its decision on section 24 of the trademark statute instead of on section 2(d).

Even if appellee failed to prove ownership of a family of marks, I find a likelihood of confusion between appellant's mark "E–Z OPEN PAK" and appellee's marks "E–Z PAK" and "E–Z OPENER" for which the board found proof of prior and continuous use.

All of the board members agreed that the registration should be canceled, the only difference being in the basis for it. This court, however, sustains dismissal of the petition and permits the registration to stand because appellee did not appeal and the section 24 question was not properly raised. At this point, appellee could well be in doubt as to his remedies. Should he petition to cancel again, based on section 24? His first petition to cancel, nearly four years ago, was denied. Reluctance to spend another four years in the administrative jungle to test another ground would be understandable. Any further action by appellee would involve further expense, delay,

and inconvenience. Perhaps, in retrospect, appellee should have been "dissatisfied" (35 U.S.C. § 141) when he won below, albeit on other grounds, and should have filed a cross appeal. Surely Congress did not intend to set up intricacies and technicalities to deny relief to those who fail to assign the proper grounds for a petition to cancel.

The heading of the case shows that Cancellation No. 7604 is before the court. Appellee filed the petition for that cancellation, appeared below, and appeared before this court. To say, as does the majority, that this court *cannot* decide in his favor because he failed to appeal from a decision granting the full relief for which he petitioned, is to place form before substance. I am of the opinion that we *can* consider the issue of likelihood of confusion presented in Cancellation No. 7604, and should find confusion likely.

My views coincide with those of the dissenting member of the board below, who said:

"The record in this case clearly shows that the products marketed by respondent under its mark are prepared meat products packaged in a cellophane tear open package, or, stated conversely, a cellophane tear open package containing prepared meat products. Further, it is readily apparent that the mark 'E–Z OPEN PAK' relates to a particular feature of the package which contains such meats. Petitioner, on the other hand, has established prior use of the substantially similar marks 'E–Z OPENER' and 'E–Z PAK' for bags, sacks, and/or containers, which individually bear petitioner's marks, and of which a substantial percentage are sold to the food retailers for use in the packaging of meat products. In view of the close relationship of respondent's products, as described above, to petitioner's bags, cartons or containers which are used in the packaging of meats, and which visibly bear the mark on the package and/or container when sold to the ultimate consumer, it seems quite evident that when the respective marks are applied to the aforementioned products, that persons familiar with petitioner's marks, upon seeing the mark 'E–Z OPEN' affixed to the package or carton containing meat, would reasonably assume that such container either originates with or is in some way connected with petitioner. I would therefore grant the petition to cancel respondent's registration."

I would, therefore, reverse the decision of the board dismissing the petition to cancel.