Tom CUNNINGHAM, Appellant,

v.

LASER GOLF CORPORATION (now known as BelAir Golf), Appellee.

No. 99–1585.

United States Court of Appeals, Federal Circuit.

Aug. 15, 2000

Robert D. Fish, Fish & Associates, LLP, of Fullerton, California, for appellant.

Michael Fitzgerald, Barnes, Crosby, Fitzgerald & Zeman, L.L.P., for defendant-appellee.

Before MAYER, Chief Judge, ARCHER, Senior Circuit Judge, and LINN, Circuit Judge.

LINN, Circuit Judge.

Appellant Tom Cunningham seeks review of a final decision of the Trademark Trial and Appeal Board ("Board" or "TTAB") canceling his registration for the mark LASERSWING, for golf clubs, in light of the appellee's prior use and registration of the mark LASER for golf clubs and golf balls. *See Laser Golf Corp. v. Tom Cunningham,* Cancellation No. 26,-054, slip op. at 7, 1999 WL 421020 (TTAB June 21, 1999). Because the Board's findings are supported by substantial evidence, we hold that the Board did not commit reversible error and affirm.

## BACKGROUND

Cunningham produces a device that looks like a wood, a type of golf club. However, the device has a hollow plastic head that is not designed to impact golf balls. Rather, the device is used by golfers to practice and improve their golf swing with the aid of two light-emitting diodes of different colors contained in the

head. Cunningham markets the device under the name LASERSWING. He received Reg. No. 2,025,118 for the mark LASERSWING on December 24, 1996. LASERSWING is registered on the Principal Register and Cunningham alleges a first use in 1993. Cunningham's registration contains a typed drawing and states that the mark is for golf clubs.

It is undisputed that Laser Golf Corp. ("Laser Golf"), the appellee, uses the mark LASER to market golf clubs and golf balls, and that in 1983 it received separate registrations for the mark LASER when used with either of these goods. These registrations are Reg. No. 1,243,793 for the mark LASER for golf clubs and Reg. No. 1,247,799, also for the mark LASER but for golf balls. The parties do not contest Laser Golf's priority. Laser Golf filed a petition to cancel Cunningham's registration and the Board granted the petition, pursuant to 15 U.S.C. § 1052(d) (section 2(d) of the Lanham Act), concluding that there was a likelihood of confusion. Cunningham appeals the Board's decision to this court. We have exclusive appellate jurisdiction. *See* 28 U.S.C. § 1295(a)(4)(B) (1994); 15 U.S.C. § 1071(a) (1994).

## DISCUSSION

### A. Standard of Review

■ A determination of likelihood of confusion is a legal conclusion based on underlying facts. *See In re Dixie Restaurants, Inc.,* 105 F.3d 1405, 1406, 41 USPQ2d• 1531, 1533 (Fed.Cir.1997). This court reviews the legal conclusion without deference and the underlying factual findings for substantial evidence. *See Recot, Inc. v. M.C. Becton,* 214 F.3d 1322, 1327, 54 USPQ2d 1894, 1897 (Fed.Cir.2000) (applying *In re Gartside,* 203 F.3d 1305, 53 USPQ2d 1769 (Fed.Cir.2000) to decisions of the TTAB).

### B. Analysis

#### 1. Cancellation Proceedings

■ The Lanham Act allows for cancellation of a Principal Register registration by anyone "who believes that he is or will be damaged ... by the registration." 15 U.S.C.A. § 1064 (West 1996 & Supp.2000); *see also Golden Gate Salami Co. v. Gulf States Paper Corp.,* 51 C.C.P.A. 1391, 332 F.2d 184, 188, 141 USPQ 661, 664 (CCPA 1964) (quoting and explaining the statute). The party seeking cancellation must prove two elements: (1) that it has standing; and (2) that there are valid grounds for canceling the registration. *See International Order of Job's Daughters v. Lindeburg & Co.,* 727 F.2d 1087, 1091, 220 USPQ 1017, 1019 (Fed.Cir.1984); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 20:41 (4th ed. 1996 & Supp.1999) ("*McCarthy* ").

■ Standing is the more liberal of the two elements and requires only that the party seeking cancellation believe that it is likely to be damaged by the registration. *See Golden Gate,* 332 F.2d at 188, 141 USPQ at 664 (finding standing, which requires only a belief in damage, but finding no likelihood of confusion); *McCarthy,* §§ 20:7, 20:41, 20:46. A belief in likely damage can be shown by establishing a direct commercial interest. *See International Order,* 727 F.2d at 1092, 220 USPQ at 1020 (finding sufficient the petitioner's production and sale of merchandise bearing the registered mark); *McCarthy,* §§ 20:7, 20:46. In this case, as stated earlier, Laser Golf owns two prior registrations. These registrations and the products sold under the mark they register suffice to establish Laser Golf's direct commercial interest and its standing to petition for cancellation of Cunningham's LASERSWING mark.

■ Establishing the second element, a valid ground for cancellation, is simplified if the registered mark has been on the Principal Register for less than five years. *See International Order,* 727 F.2d at 1091, 220 USPQ at 1020; *McCarthy,* § 20:42.

In the present case, Cunningham's mark LASERSWING has a Principal Register registration date of December 24, 1996 and, therefore, has been on the Principal Register for less than five years. In such a case, any ground that would have prevented registration in the first place qualifies as a valid ground for cancellation. *See id.* One such ground is § 2(d) of the Lanham Act, relating to a likelihood of confusion between the mark sought to be canceled and a mark for which the party seeking cancellation can establish either prior use or prior registration. *See Golden Gate,* 332 F.2d at 188, 141 USPQ at 664 (finding no likelihood of confusion); *McCarthy,* § 20:53 (calling § 2(d) the most common ground). Laser Golf thus properly relied on a likelihood of confusion between LASERSWING and LASER, under § 2(d), as the basis for the appealed cancellation proceeding.

### 2. The *DuPont* Requirements

In *Application of E.I. DuPont DeNemours & Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973), a case also involving an appeal from the Board, one of our predecessor courts listed thirteen factors that are relevant in a likelihood of confusion analysis. *See id.* at 1361, 177 USPQ at 567. The thirteen factors are: (1) the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression; (2) the similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use; (3) the similarity or dissimilarity of established, likely-to-continue trade channels; (4) the conditions under which and buyers to whom sales are made, i.e., "impulse" vs. careful, sophisticated purchasing; (5) the fame of the prior mark (sales, advertising, length of use); (6) the number and nature of similar marks in use on similar goods; (7) the nature and extent of any actual confusion; (8) the length of time during

and conditions under which there has been concurrent use without evidence of actual confusion; (9) the variety of goods on which a mark is or is not used (house mark, "family" mark, product mark); (10) the market interface between applicant and the owner of a prior mark; (11) the extent to which applicant has a right to exclude others from use of its mark on its goods; (12) the extent of potential confusion, *i.e.,* whether *de minimis* or substantial; and (13) any other established fact probative of the effect of use. *See id.*

■ Cunningham[1] argues that *DuPont* requires all thirteen listed factors to be analyzed. For support, Cunningham cites the following passage from *Bongrain Int'l (Am.) Corp. v. Delice de France, Inc.,* 811 F.2d 1479, 1485, 1 USPQ2d 1775, 1779 (Fed.Cir.1987): "We approach that issue [of likelihood of confusion], of course, on the basis of the situation as a whole and in light, at least, of all 13 of the 'DuPont factors' upon which Bongrain relied before the board and here." *Id.* Cunningham's interpretation of *DuPont* goes too far. *Bongrain* simply acknowledged that all factors relevant to the likelihood of confusion issue and addressed by the evidence in the record must be considered. As the *DuPont* court explains, the relevant factors, *"when of record,* must be considered." *DuPont,* 476 F.2d at 1361, 177 USPQ at 567 (emphasis added); *see also Olde Tyme Foods, Inc. v. Roundy's, Inc.,* 961 F.2d 200, 202, 22 USPQ2d 1542, 1544 (Fed.Cir. 1992) (factors must be considered "when relevant evidence is of record"); *Giant Food, Inc. v. Nation's Foodservice, Inc.,* 710 F.2d 1565, 1569, 218 USPQ 390, 393 (Fed.Cir.1983) (factors must be considered "when of record"). Thus, the obligation to consider a factor does not arise in a vacuum and only arises if there is evidence of record relating to that factor. The *Bongrain* court, which considered all of the factors "upon which Bongrain relied before the board and here," *Bongrain,* 811 F.2d at 1485, 1 USPQ2d at 1779, considered the

---

**1.** Laser Golf did not submit a brief to this court.

factors of record and requires nothing more than *DuPont*. Further, this court has more recently explained that it is sufficient, under the *DuPont* analysis, for the Board to give some indication that it has considered the factors, and that it need not discuss each of them. *See Dixie*, 105 F.3d at 1407, 41 USPQ2d at 1533.

■ Cunningham also argues that the Board erred in its analysis of most of the *DuPont* factors. Cunningham admits that the Board analyzed, albeit briefly, factors 1, 2, 6, and 9. With regard to the remaining factors, however, Cunningham claims that the Board either failed to analyze them or expressly ignored relevant evidence relating to them. Cunningham also alleges that the Board erred in its analysis of factor one.

We disagree with Cunningham and, as explained below, hold that the Board satisfied the *DuPont* test by considering each of the *DuPont* factors for which evidence was presented in the record. We address each of these factors in turn.

a. Comparing the Marks—Factor One

The Board analyzed the two marks, LASER and LASERSWING, by first discussing "the shared presence of the term LASER," and then discussing the impact of "[t]he addition of 'SWING' in respondent's mark." *Laser Golf,* slip op. at 6. The Board concluded that the addition of SWING was "insufficient to distinguish the two marks." *Id.* Although Cunningham acknowledges that the Board analyzed the marks, thus complying with the first *DuPont* factor, he argues that the Board did not provide any justification for dissecting the mark LASERSWING and that the Board erred as a matter of law by not analyzing the marks in their entireties.

■ We disagree with Cunningham. First, the Board was justified in examining each component of the mark LASERSWING and the effect of that component on the issue of likelihood of confusion as between the respective marks in their entire-

ties. *See In re National Data Corp.,* 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir.1985) ("[T]here is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties."); *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1566, 4 USPQ2d 1793, 1798 (Fed.Cir.1987) ("[I]t is not error in articulating reasons en route to a conclusion to indicate that some features of a mark are more distinctive than others."). Second, in considering "[t]he addition of 'SWING,'" *Laser Golf,* slip op. at 6, to LASER, the Board analyzed Cunningham's mark LASERSWING as a whole, as it properly should have. *See National Data,* 753 F.2d at 1058, 224 USPQ at 751.

Cunningham also argues that the two marks have significant differences. However, Cunningham's argument concerns a factual finding, and there is substantial evidence supporting the Board's finding that the marks are similar. First, as the Board found, because both marks begin with "laser," they have "consequent similarities in appearance and pronunciation." *Laser Golf,* slip op. at 6. Second, the term "swing" is both common and descriptive. Cunningham admits that the term "swing" "is a common term used when referring to golf clubs," and the Board quotes Cunningham as saying that the product is "a swinging club, so Laserswing just seemed logical," *Laser Golf,* slip op. at 4. These statements, which Cunningham does not deny making, recognize the descriptive nature of the component "swing." Regarding descriptive terms, this court has noted that the "descriptive component of a mark may be given little weight in reaching a conclusion on likelihood of confusion." *National Data,* 753 F.2d at 1060, 224 USPQ at 752.

b. Trade Channels—Factor Three

Cunningham argues that the Board ignored certain evidence regarding "differ-

ences in trade channels." Cunningham does not specifically identify the allegedly ignored evidence, but it appears that he is referring to product distinctions. Cunningham has emphasized how the device that he sells under the mark LASERSWING differs from an ordinary golf club. The Board did not ignore these differences but, rather, properly discounted them.

After noting that Cunningham's product and the goods of Laser Golf were "identical in part (golf clubs) and otherwise closely related," *Laser Golf,* slip op. at 5, the Board held that "because neither petitioner nor registrant has limited the products identified in the respective registrations to any particular channels of trade or classes of purchasers, we must deem the goods to travel in all appropriate trade channels to all potential purchasers of such goods ... [which includes] beginning as well as experienced golfers." *Laser Golf,* slip op. at 5–6. The Board, thus, determined that such evidence of the difference between Cunningham's product and an ordinary golf club was not probative given that Cunningham's registration identifies simply "golf clubs" as the goods covered.

▪ Our precedent requires the Board to look to the registration to determine the scope of the goods/services covered by the contested mark. *See Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n,* 811 F.2d 1490, 1493, 1 USPQ2d 1813, 1815 (Fed.Cir.1987); *Dixie,* 105 F.3d at 1407–08, 41 USPQ2d at 1534; *Commerce Drug Co. v. Kirkman Labs., Inc.,* 59 C.C.P.A. 1085, 461 F.2d 833, 835, 174 USPQ 265, 267 (CCPA 1972); *see also* United States Dep't of Commerce, Patent and Trademark Office, *Trademark Manual of Examining Procedure,* § 1207.01 (2nd ed., Rev. 1, Apr. 1997) (stating that the likelihood of confusion inquiry concerns the applicant's mark "when used on or in connection with the goods or services identified in the application") (*"TMEP"*). Proceedings before the Board are concerned with registrability and not use of a mark. Accordingly, the identification of

goods/services statement in the registration, not the goods/services actually used by the registrant, frames the issue.

**c. Conditions of Sales—Factor Four**

Cunningham argues that the Board ignored certain evidence regarding "the importance of the conditions under which sales are made." Specifically, Cunningham's argument is that the Board failed to consider the sophistication of golfers as "brand conscious" consumers.

We agree that the Board did not address Cunningham's statement that golfers are meticulous purchasers who distinguish between brands. As a result, the Board did not specifically consider the sophistication, that is, "[t]he discrimination and degree of care," *In re Shell Oil Co.,* 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir.1993), of golfers. *See Electronic Design & Sales, Inc. v. Electronic Data Systems Corp.,* 954 F.2d 713, 718, 21 USPQ2d 1388, 1392 (Fed.Cir.1992) (stating that "[w]here the purchasers are the same, their sophistication is important and often dispositive").

However, any error by the Board in not specifically considering the sophistication of golfers was harmless. *See* 28 U.S.C. § 2111 (1994) (directing appellate courts to disregard harmless errors that "do not affect the substantial rights of the parties"); *Cable Elec. Prods., Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1021, 226 USPQ 881, 884 (Fed.Cir.1985) (finding error harmless), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 50 USPQ2d 1672 (Fed. Cir.1999) (en banc); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 892, 8 USPQ2d 1468, 1480 (Fed.Cir. 1988) (finding error harmless). Even if we were to credit Cunningham's self-serving statement that all golfers distinguish between brands, he has not convinced us that the ultimate legal question of likelihood of confusion should be decided differently. The alleged sophistication of golfers is outweighed by the Board's findings of strong

similarity of marks and identity of goods, both of which we uphold. *See Weiss Associates. Inc. v. HRL Assocs., Inc.*, 902 F.2d 1546, 1548, 14 USPQ2d 1840, 1841–42 (Fed.Cir.1990) (similarities in marks and products overshadowed sophistication of purchasers).

### d. Factors 5, 7–8, and 10–13

Cunningham argues that the Board ignored certain "arguments as to absence of fame of the Appellee's marks." Cunningham does not identify the arguments that were allegedly ignored, but it is clear that the Board sufficiently addressed this factor. The Board expressly discounted any fame, stating that "a mark need not be 'famous' in order to be entitled to protection." *See Laser Golf,* slip op. at 7. Thus, it can be inferred that the Board assumed that the prior mark was not famous, making a finding of likelihood of confusion harder to achieve. *See Kenner Parker Toys Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 352–53, 22 USPQ2d 1453, 1456 (Fed.Cir.1992) (stating that famous marks enjoy more protection). Therefore, even if the Board had ignored arguments regarding the absence of fame, it would not have resulted in any harm.

With regard to actual confusion *vel non,* Cunningham argues that the Board ignored the "absence of actual confusion." However, the Board addressed this factor and stated that it could not conclude that there had even been an opportunity for actual confusion. *See Laser Golf,* slip op. at 7. Furthermore, substantial evidence of record supports this finding; Cunningham admitted that sales of his product were only in the tens.

Concerning the market interface between Cunningham and Laser Golf, Cunningham argues that there "was no analysis at all as to the market interface." *DuPont* lists several possible market interfaces, such as: (1) consent to register or use; (2) contractual provisions designed to preclude confusion; (3) assignment; and (4) laches and estoppel attributable to the challenger that would indicate lack of confusion. *See DuPont,* 476 F.2d at 1361, 177 USPQ at 567. There is no indication that any evidence or argument was submitted regarding any one of these market interfaces or any other market interface. Therefore, *DuPont* requires no consideration of this factor.

With regard to Cunningham's right to exclude, Cunningham argues that the Board ignored the "relevance of descriptive use of the term 'laser' in golfing with respect to [sic, the] right to exclude." However, this argument is unavailing because, as the Board noted, both marks begin with the term "laser" and Cunningham's mark merely adds the term "swing." *See Laser Golf,* slip op. at 6. Therefore, any characterization of "laser" applies equally to both marks and Cunningham can only distinguish his mark based on the addition of the term "swing."

Cunningham next argues that there was no analysis of the "extent of potential confusion." As described above, however, the Board explained that the relevant goods of both parties were identical, based on the identification of goods in the respective registrations, and, as such, traveled in the same channels of trade to the same purchasers. *See Laser Golf,* slip op. at 5–6. These findings are supported by substantial evidence.

■ Cunningham also argues that there was no analysis of the "evidence of use of the mark on the goods as another relevant factor." Cunningham is apparently referring to the appearance of the mark as he uses it in commerce. He claims to distinguish his mark with such techniques as using particular colors and a particular font, using specific arrangements of lower and upper case, using colored whoosh stripes, and by the juxtaposition of the main brand name.

■ However, Cunningham's argument is inapposite to our review of this cancellation proceeding. The record

shows that the registration for the LAS-ERSWING mark contains a "typed drawing." *See* 37 C.F.R. § 2.21(a)(3) (1995) (requiring a drawing in order to obtain a filing date)[2]; 37 C.F.R. § 2.51(e) (1995) (allowing a typed drawing for marks consisting of words that are not depicted in special form); *see also TMEP*, § 807.07 (providing for typed drawings). Registrations with typed drawings are not limited to any particular rendition of the mark and, in particular, are not limited to the mark as it is used in commerce. *See Vornado, Inc. v. Breuer Elec. Mfg. Co.*, 55 C.C.P.A. 858, 390 F.2d 724, 727, 156 USPQ 340, 342 (1968) (stating that because the registration for the senior mark, upon which the opposition was based, disclosed only the word, "the [advertising] display of the mark in a particular style is of no material significance since the display may be changed at any time as may be dictated by the fancy of the applicant or the owner of the mark"); *Phillips Petroleum Co. v. C.J. Webb, Inc.*, 58 C.C.P.A. 1255, 442 F.2d 1376, 1378, 170 USPQ 35, 36 (1971) ("The drawing in the [opposed] application shows the mark typed in capital letters, and ... this means that [the] application is not limited to the mark depicted in any special form."); *Kimberly–Clark Corp. v. H. Douglas Enters., Ltd.*, 774 F.2d 1144, 1147, 227 USPQ 541, 543 (Fed.Cir.1985) (stating that trade dress associated with the mark of the opposed registration was irrelevant in distinguishing the mark because "such dress might well be changed at any time; only the word mark itself is to be registered"). Therefore, it is irrelevant that Cunningham has a particular display for his mark in commerce, and the Board was correct to ignore those features.

### 3. Goods Sold in the Marketplace

The Board found the relevant goods of the two parties to be identical: "because neither petitioner nor registrant has limited the products identified in the respective registrations to any particular channels of trade or classes of purchasers, we must deem the goods to travel in all appropriate trade channels to all potential purchasers of such goods." *Laser Golf,* slip op. at 5–6. Cunningham argues, however, that the Board erred in this conclusion because the law requires the Board to focus on the goods sold in the marketplace. For support, Cunningham cites section 2(d) of the Lanham Act, as well as *Bongrain, Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1576, 222 USPQ 665 (Fed.Cir.1984), and *Olde Tyme*. Cunningham then points out that the goods that the parties sell in the marketplace are not identical.

First, Cunningham misstates the law regarding Board proceedings under section 2(d) of the Lanham Act. As explained earlier, the Board must look to the registrations themselves to determine the scope of the goods covered by the contested mark. *See Canadian,* 811 F.2d at 1493, 1 USPQ2d at 1815; *Dixie,* 105 F.3d at 1407–08, 41 USPQ2d at 1534; *Commerce Drug,* 461 F.2d at 835, 174 USPQ at 267.

Second, Cunningham's citations to *Bongrain, Stock Pot,* and *Olde Tyme* are unavailing. Cunningham argues that in *Bongrain* this court looked to the marketplace to determine likelihood of confusion. However, *Bongrain* is distinguishable because it dealt with the concurrent use of similar marks by two parties under an agreement between the parties whereby one used its mark on baked goods and the other used its mark on dairy products. *See Bongrain,* 811 F.2d at 1481–82, 1 USPQ2d at 1776. Cunningham argues that in *Stock Pot* this court focused on the marks as they were used in commerce. However, *Stock Pot* is inapposite because the parties agreed that the marks were confusingly similar and the primary issue was whether there was a prior continuing use by the challenger. *See Stock Pot,* 737 F.2d at 1578, 222 USPQ at 666. Cunningham argues that in *Olde Tyme* this court

---

**2.** The 1995 version of the code of federal regulations was effective on August 11, 1995, the filing date of the registration for LAS-ERSWING.

approved of the consideration of evidence of third party use of similar marks. However, the *Olde Tyme* court merely noted that such evidence could be relevant to the strength of a mark. *See Olde Tyme*, 961 F.2d at 204, 22 USPQ2d at 1545. None of these cases allow the Board, in cancellation proceedings, to ignore the registration's description of the goods that are covered by the challenged mark and to focus on the goods sold by the challenged party in the marketplace.

### 4. Laser Golf's Evidentiary Burden

 Cunningham correctly notes that Laser Golf had the burden of proving by a preponderance of the evidence that there was a likelihood of confusion between the two marks. Cunningham claims that Laser Golf did not meet that burden and, therefore, that the Board erred in finding for Laser Golf. Cunningham's argument is that the Board's opinion was too short to provide an adequate analysis reflecting satisfaction of the evidentiary burden by Laser Golf. This argument lacks merit. The Board's opinion contains sufficient findings and reasoning to permit our review. Furthermore, "[w]e sit to review judgments, not opinions," *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983), and all of Cunningham's substantive arguments have failed to convince us that the Board's judgment should be disturbed.

### CONCLUSION

Because the Board committed no reversible error we affirm the Board's cancellation of Cunningham's LASERSWING mark.

*AFFIRMED*