THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
14 August 2007
AD

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————

**Trademark Trial and Appeal Board**
————

In re Chica, Inc.
————

Serial No. 76627857
————

Colin P. Abrahams, Esq. for Chica, Inc.

Sally Shih, Trademark Examining Attorney, Law Office 106
(Mary I. Sparrow, Managing Attorney).

————

Before Hairston, Drost, and Walsh, Administrative Trademark
Judges.

Opinion by Drost, Administrative Trademark Judge:

On January 13, 2005, Chica, Inc. (applicant) applied
to register the mark shown below on the Principal Register
for goods ultimately identified as: jewelry, necklaces,
jewelry chains, charms; watches and clocks, watch straps
and bands, watch cases; earrings, rings as jewelry in class
14:



The application contains a translation of the term Corazon as "Heart" and Chica as "Girl."  It is based on applicant's allegation that it first used the mark anywhere and in commerce on February 14, 2004, and it also claims ownership of Registration No. 2,951,856 for the mark CHICA.

The examining attorney has refused to register the mark under Section 2(d) of the Trademark Act because of a prior registration for the mark shown below for "jewelry" in Class 14.[1]  15 U.S.C. § 1052(d).

★CORAZON★

The registration contains a translation of the word "Corazon" as "Heart."

The examining attorney also refused registration on the ground that "the specimen of use is deemed temporary in nature because it is not actually in use."  Brief at 7.

---

[1] Registration No. 2,345,775, issued April 25, 2000.  Affidavits under Section 8 and 15 accepted or acknowledged.

After the examining attorney made the refusals final, this appeal followed.

We begin by addressing the issue pertaining to the specimen of use, which is set out below.[2]



The examining attorney argues that the specimen "is not the actual jewelry in the market place and it is a mere representation of the goods that may or may not be in use." Brief at 7. Applicant maintains that the "specimen originally filed comprises a representation of a piece of jewelry by the Applicant. The specimen was not 'temporary in nature' but a representation of an actual piece of jewelry." Request for reconsideration at 8.

The Trademark Act requires that an application that is based on use must include "such number of specimens or facsimiles of the mark as used as may be required by the Director." 15 U.S.C. § 1051(a)(1). "A trademark specimen

_____

[2] While difficult to see in the image above, the top of the drawing depicts the mark although it is upside down.

is a label, tag, or container for the goods, or a display associated with the goods."  37 CFR § 2.56(b)(1).  "A photocopy or other reproduction of a specimen of the mark *as actually used* on or in connection with the goods, or in the sale or advertising of the services, is acceptable." 37 CFR § 2.56(c) (emphasis added).

More specifically, "the specimen may not be a 'picture' of the mark, such as an artist's drawing or a printer's proof that merely illustrates what the mark looks like and is not actually used on or in connection with the goods in commerce."  TMEP § 904.04 (4th ed. April 2005).

> Actual specimens are preferred… However, a photograph, photocopy or other reproduction of a specimen of the mark as used on or in connection with the goods, or in the sale or advertising of the services, is acceptable…  It is permissible to show the complete article in one photograph and the written matter in another, so that the written matter will be legible, or to show different views of an article either in a single photograph or in separate photographs.

TMEP § 904.08.

While facsimiles may also be submitted as specimens, these facsimiles would not include a drawing of the mark on the goods.

> Actual specimens are preferred if they are available and not "bulky."  However, a photograph, photocopy or other reproduction of a specimen of the mark as used on or in connection with the goods, or in the sale or advertising of the services, is acceptable.  37 CFR §2.56(c).  The applicant should submit facsimiles if

4

> actual specimens exceed the size requirements of 37
> CFR §2.56(d)(1).
>
> Facsimiles should show the whole article to which the
> mark is applied, or enough of the article so that the
> nature of the article can be identified.  The mark and
> all other pertinent written matter on the article
> should be clear and legible.  It is permissible to
> show the complete article in one photograph and the
> written matter in another, so that the written matter
> will be legible, or to show different views of an
> article either in a single photograph or in separate
> photographs.

TMEP § 904.08 (parenthetical omitted).

A facsimile is defined as an "exact copy, as of a
book, painting, or manuscript."  *The Random House*
*Dictionary of the English Language (unabridged)* (2d ed.
1987).[3]  Applicant's artist rendition is not a facsimile of
its mark because it does not show the mark as "actually
used on or in connection with the goods."  TMEP § 904.04.

We point out that to the extent that the examining
attorney has referred to the specimens as being
"temporary," this is not the characteristic of the
specimens that is fatal to registration.  Indeed, in
"connection with labels whose appearance suggests that they
are only for temporary use, the examining attorney *may*
consider it necessary to make further inquiry under 37

---

[3] We take judicial notice of this definition.  *University of*
*Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594,
596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir.
1983).

C.F.R. § 2.61(b) in order to properly examine the application." TMEP § 904.04(a) (emphasis added). Nothing prohibits the registration of a mark in an application that contains only "temporary" specimens provided that the specimens were actually used in commerce. However, the examining attorney has also argued that the specimen is not acceptable because "it is not actually in use." Brief at 7. Applicant's specimen appears to be a mere drawing of the goods with an illustration of how the mark may be displayed and not an actual specimen that applicant used in commerce. Indeed, applicant describes the specimen as "a representation of an actual piece of jewelry." Inasmuch as applicant has not explained how this drawing was itself actually used, we affirm the examining attorney's requirement for an acceptable specimen.

Next, we consider the issue of whether applicant's mark is confusingly similar to the mark in the cited registration. The examining attorney argues that applicant's and registrant's marks "share the significant common term CORAZON" and that "an average consumer would immediately be drawn to the term CORAZON when encountering" applicant's mark. Brief at 4. The examining attorney also points out that the goods are identical and highly related. Applicant, on the other hand, highlights the numerous

6

differences between the marks themselves including the "additional distinctive word 'CHICA'" in applicant's mark and the difference in script and design between the marks. Also, applicant points to the registration of a third-party mark as evidence that there is no likelihood of confusion in the instant case.

When there is an issue of likelihood of confusion, we consider the evidence in light of the relevant factors set out in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003); and *Recot, Inc. v. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1896 (Fed. Cir. 2000). In considering the evidence of record on these factors, we must keep in mind that "[t]he fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).

We point out that both the cited registration's and the application's identifications of goods include the identical goods: "jewelry." "When marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely

confusion declines." *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992). "Jewelry" is the only good in the cited registration and it is closely related to the other goods in the pending application including jewelry bracelets, jewelry chains, and rings as jewelry. This factor strongly favors a conclusion of likelihood of confusion.

Also, inasmuch as the goods are identical and closely related and there are no restrictions on the goods, we must assume that the goods move in the same channels of trade to the same customers. *Schieffelin & Co. v. Molson Companies Ltd.*, 9 USPQ2d 2069, 2073 (TTAB 1989) ("[S]ince there are no restrictions with respect to channels of trade in either applicant's application or opposer's registrations, we must assume that the respective products travel in all normal channels of trade for those alcoholic beverages").

Second, we compare the marks of applicant and registrant:



**✦CORAZON✦**

Both marks contain the identical word CORAZON, which is translated as "Heart." It is the only word in registrant's mark and it is the first word in applicant's mark. The only other words in applicant's mark are the phrase "BY CHICA." These words are translated as "By Girl." Applicant's corporate name is Chica, Inc. As such, to many consumers, applicant's mark for the identical word "Corazon" followed by the phrase "BY CHICA" will simply be viewed as the identification of the previously anonymous source of the goods sold under the mark CORAZON. In a similar case, the board held that: "those familiar with only applicant's mark [SPARKS BY SASSAFRAS and design] would, upon encountering the registered mark [SPARKS] on related goods, assume that all "SPARKS" products come from a single source, and that that source was in some instances further identified with the words 'by sassafras.'" *In re Apparel Ventures, Inc.*, 229 USPQ 225, 226 (TTAB 1986). *See also In re Riddle*, 225 USPQ 630 (TTAB 1985) (RICHARD PETTY'S ACCUTUNE (and design) for automotive service

centers confusingly similar to ACCUTUNE for automotive testing equipment); *In re Champion International Corporation*, 196 USPQ 48 (TTAB 1977) (HAMMERMILL MICR CHECK-MATE for paper for writing, printing, duplicating and office use confusingly similar to CHECK MATE for envelopes); and *In re C.F. Hathaway Co.*, 190 USPQ 343 (TTAB 1976) (HATHAWAY GOLF CLASSIC for knitted sports shirts confusingly similar to GOLF CLASSIC for men's hats).

We add that the other differences between the marks do not overcome the fact that the marks are both dominated by the word "Corazon."  The stars in registrant's mark are relatively minor and the heart design in applicant's mark simply reinforces the dominant word "Corazon," which is translated as "Heart."  These "minor design features do not necessarily obviate likelihood of confusion arising from consideration of the marks in their entireties.  Moreover, in a composite mark comprising a design and words, the verbal portion of the mark is the one most likely to indicate the origin of the goods to which it is affixed." *CBS Inc. v. Morrow*, 708 F.2d 1579, 218 USPQ 198, 200 (Fed. Cir. 1983).

Because they are both dominated by the word "Corazon," the marks' similarities in appearance, sound, meaning, and connotation overcome their differences.  *Palm*

*Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005). *See also Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1845 (Fed. Cir. 2000) ("[B]ecause both marks begin with 'laser,' they have consequent similarities in appearance and pronunciation") (quotation marks in original omitted); and *In re Dixie Restaurants, Inc.*, 105 F.3d 1405, 41 USPQ 1531, 1534 (Fed. Cir. 1997) (more weight given to common dominant word DELTA).

Applicant makes one additional argument. It points out that there is another registration for the following mark owned by a third party.[4]



Applicant argues that the "fact that CORAZON COEUR and logo was registered must be considered undisputed evidence that the styles and logos of the CORAZON COEUR logo and the cited registration are *different enough from each other* and *each sufficiently distinctive* to allow both to be

---

[4] Registration No. 2,442,599 issued April 10, 2001.

registered without the likelihood of confusion." Brief at 5.

We do not find the existence of this registration to be significant for several reasons. First, an applicant does not overcome a likelihood of confusion refusal by pointing to other registrations and arguing that they are as similar to the cited registration as applicant's mark. While third-party registrations may be used to demonstrate that a portion of a mark is suggestive or descriptive, they "cannot justify the registration of another confusingly similar mark." *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987), *quoting Plus Products v. Star-Kist Foods, Inc.*, 220 USPQ 541, 544 (TTAB 1983).

Second, we note that the words CORAZON COEUR are translated as "Heart Heart" in Registration No. 2,442,599. In addition, the mark is described as consisting of "two stylized snakes forming a heart shape." Finally, the registration contains a disclaimer of the terms "Corazon Coeur." The fact that an applicant has disclaimed a term may result in the term having less weight in a likelihood of confusion analysis. "When comparing the similarity of marks, a disclaimed term, here 'COMMUNICATIONS,' may be given little weight, but it may not be ignored. *M2 Software Inc. v. M2 Communications Inc.*, 450 F.3d 1378, 78

12

USPQ2d 1944, 1948-49 (Fed. Cir. 2006). Disclaimed matter is often "less significant in creating the mark's commercial impression." *In re Code Consultants, Inc.*, 60 USPQ2d 1699, 1702 (TTAB 2001). Therefore, the fact that another mark has registered with a disclaimer of the term CORAZON does not establish that there is no likelihood of confusion in this case.

When we consider the record, we conclude that there is a likelihood of confusion here. The goods of applicant and registrant are identical or closely related. The marks are both dominated by the same word CORAZON. As discussed previously, the design features of the marks are relatively minor, and the additional wording in applicant's mark simply appears to identify what would have previously been an anonymous source of the goods. We add that even if the word CORAZON, and its English translation, was considered to be highly suggestive of jewelry, it nonetheless is entitled to protection from the use of a very similar mark on jewelry products. "[E]ven weak marks are entitled to protection against registration of similar marks, especially identical ones, for related goods and services." *In re Colonial Stores*, 216 USPQ 793, 795 (TTAB 1982); *In re The Clorox Co.*, 578 F.2d 305, 198 USPQ 337, 341 (CCPA 1978) (ERASE for a laundry soil and stain remover held

confusingly similar to STAIN ERASER, registered on the Supplemental Register, for a stain remover).

Therefore, we conclude that there is a likelihood of confusion. Even if we had any doubts about whether there is a likelihood of confusion, we must resolve any doubts in favor of the prior registrant and against the newcomer. *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988) and *In re Pneumatiques, Caoutchouc Manufacture et Plastiques Kleber-Colombes*, 487 F.2d 918, 179 USPQ 729, 729-30 (CCPA 1973).

Decision: The refusals to register are affirmed.