THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
6/28/10

# UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## Trademark Trial and Appeal Board

_____

### The Saul Zaentz Company dba Tolkien Enterprises
v.
### Joseph M. Bumb

_____

### Opposition No. 91156452
to application Serial No. 78083686[1]

---

[1] In addition to the present opposition proceeding involving applicant's application to register the MITHRIL mark for jewelry, the parties are involved in two other opposition proceedings. Opposition No. 91156518 involves applicant's September 12, 2001 application Serial No. 78083685 for registration of the mark LOTR (for jewelry). Combined Opposition No. 91170589 involves applicant's September 23, 2001 application Serial No. 78085108 for registration of the mark MIDDLE EARTH JEWELRY (for jewelry), and his September 23, 2001 application Serial No. 78085111 for registration of the mark ARAGORN (for jewelry).

Finding there to be common issues of law and fact in the three oppositions involving the four applications, the Board consolidated the three proceedings in orders dated July 23, 2004, January 24, 2007 and February 9, 2007, with the present MITHRIL opposition serving as the parent case. The cases have proceeded as consolidated cases for purposes of discovery, trial and briefing.

However, we deem it appropriate for purposes of final decision to decide the three cases separately, in separate opinions. Although the three cases share common legal and factual issues which warranted consolidation for purposes of discovery, trial and briefing, the issues and evidence are not identical in the three cases. In the interest of clarity, each of the three cases warrants its own opinion at final decision.

We note as well that applicant has consistently opposed the consolidation of these cases out of his concern that the consolidation would result in a prejudicial commingling and confusion of the evidence and our findings in each of the cases,

_____

Carole F. Barrett, Blake J. Lawit and Sarah J. Givan of Howard Rice et al. for The Saul Zaentz Company dba Tolkien Enterprises.

Joseph M. Bumb, pro se.

_____

Before Grendel, Walsh and Cataldo, Administrative Trademark Judges.

Opinion by Grendel, Administrative Trademark Judge:

### Introduction.

This opposition proceeding involves the famous series of fantasy literary works by J.R.R. Tolkien set in his imaginary world of Middle Earth ("the Tolkien works"). The books include *The Fellowship of the Ring*, *The Two Towers*, and *The Return of the King* (the "Lord of the Rings"

---

especially in the present MITHRIL case. For example, at page 2 of his brief, applicant asserts:

> The fact is, Applicant has always maintained an intent to use the mark MITHRIL, and any claim by SZC to the contrary is based on Applicant's statements regarding the other marks. It is for this reason that Applicant vigorously opposed a consolidation of these matters, and it is for this reason that Applicant prays that the Board will take these facts into consideration when rendering its decision.

We assure applicant that we have considered the evidence in each case independently and we are deciding each of the cases, including this MITHRIL case, based solely on the evidence pertinent to each case. Our issuance of separate opinions in these cases should further allay applicant's concerns on this issue.

trilogy), and its prequel, *The Hobbit*. In *The Hobbit*, the hero Bilbo Baggins, a hobbit (a smaller relative of humans), goes on a journey across Middle Earth during which he discovers the dangerous Ring of Power. The sequel "Lord of the Rings" trilogy is the story of the perilous journey across Middle Earth of the hobbit hero Frodo Baggins and his companions to destroy the Ring of Power and defeat the armies of the evil wizard Saruman and the dark lord Sauron.[2]

Millions of copies of the Tolkien works have been sold in the United States since their first publication in the 1950's. In a 2008 Harris poll, the Tolkien works together ranked as the third most popular book of all time among American readers, trailing only *The Bible* and *Gone With the Wind*.[3]

On September 12, 2001, Joseph M. Bumb ("applicant") filed an application (Serial No. 78083686) seeking registration on the Principal Register of the mark **MITHRIL** for goods identified in the application as "jewelry, namely, rings, bracelets, pendants, charms, necklaces, earrings, pins, tie pins and tie clasps, brooches, cufflinks, money clips, all made of precious metal and alloyed precious metal." The application is based on applicant's allegation

---

[2] Undisputed evidence establishing these and other facts relating to the plot and characters in the Tolkien works appears throughout the record.

[3] Drotos depo. at 46-48, 207-208; Imhoff depo. at 39-40.

3

of a bona fide intention to use the mark in commerce, under Trademark Act Section 1(b), 15 U.S.C. §1051(b).

The Saul Zaentz Company dba Tolkien Enterprises ("opposer") filed a notice of opposition to applicant's application for registration of the MITHRIL mark. In its amended notice of opposition, opposer alleged, in pertinent part, (a) that it owns various trademarks based on characters, places, things and events described in the Tolkien works, and that these marks include the mark MITHRIL; (b) that applicant lacked the requisite bona fide intent to use the MITHRIL mark in commerce at the time he filed the application, rendering the application void ab initio under Trademark Act Section 1(b), 15 U.S.C. §1051(b); and (c) that opposer is the prior user of the mark MITHRIL, that applicant's use of the MITHRIL mark he seeks to register is likely to cause confusion with opposer's previously-used MITHRIL mark, and that registration of applicant's mark therefore is barred under Trademark Act Section 2(d), 15 U.S.C. §1052(d).[4]

Applicant answered the amended notice of opposition by denying the salient allegations thereof.

Opposer submitted evidence at trial; applicant did not. The case is fully briefed.

---

[4] Opposer also alleged a dilution claim, but has specifically withdrawn that claim in its brief. (Opposer's brief at 23, n.4.) We give it no further consideration.

After careful consideration of all of the evidence of record and all of the arguments of the parties (including evidence and arguments not specifically discussed in this opinion), we **sustain** the opposition on the ground that applicant lacked the requisite bona fide intent to use the MITHRIL mark in commerce when he filed his intent-to-use application to register the mark, rendering the application void ab initio under Trademark Act Section 1(b), 15 U.S.C. §1051(b).[5]

### *The Evidence of Record.*

By rule, the evidence of record includes the file of applicant's opposed MITHRIL application. Trademark Rule 2.122(b)(1), 37 C.F.R. §2.122(b)(1).

In addition, opposer submitted testimony and other evidence at trial, including the following which we deem to be the most pertinent to our findings and conclusions in this case:[6]

---

[5] Because we find that opposer has established its standing and its Section 1(b) ground of opposition to registration of applicant's mark, we need not and do not reach opposer's pleaded Section 2(d) ground of opposition. *See Research In Motion Ltd. v. NBOR Corp.,* 92 USPQ2d 1926 (TTAB 2009). We note that opposer states in its brief: "This issue of Applicant's bona fide intent to use is dispositive – if Applicant lacks a bona fide intent to use the mark[] at issue, the Board need not expend resources and effort on SZC's likelihood of confusion ground for opposition." (Opposer's brief at 28, n.7.)

[6] Opposer's additional evidence (to which we shall cite in this opinion when appropriate), is summarized as follows. Opposer's Notice of Reliance ("NOR") also includes: (a) NOR Exh. 1-38,

1.  Opposer's Notice of Reliance ("NOR") on applicant's discovery responses (NOR Exh. 39, 41 and 43), including his responses to opposer's interrogatories ("Int. No. __"), requests for admissions ("RFA No. __") and requests for production of documents ("RFP No. __");

2.  The December 1, 2004 testimony deposition of applicant Joseph Bumb (taken by opposer), and exhibits thereto ("Bumb depo."); and

3.  The January 10, 2005 testimony deposition of Lars Edman (president of opposer's licensee Prince August dba Mithril Miniatures) and exhibits thereto ("Edman depo.").

Applicant submitted no evidence at trial during his assigned testimony period.[7]

---

which are status and title copies of opposer's numerous registrations of Tolkien-related marks; (b) NOR Exh. 50-112, which are numerous printed publications referring to the Tolkien works and to opposer's 2001-2003 trilogy of feature films based thereon; and (c) NOR Exh. 113-121, which are official USPTO records concerning other applications for Tolkien-related marks filed by applicant. Opposer also submitted the testimony depositions, with exhibits, of various of its employees and licensees. These are the depositions of: Albert Bendich ("Bendich depo."); Fredrica Drotos ("Drotos depo."); Juliet Mason ("Mason depo."); Laurie Battle ("Battle depo."); David Imhoff ("Imhoff depo."); and Akraim Saigh ("Saigh depo.").

[7] At page 2 of his brief, in his "Description of the Record," applicant asserts that "Applicant's record in this case" includes "The Pleadings, including any and all of Applicant's declarations." To the extent that applicant by this reference to "declarations" might be referring to his June 28, 2007 declaration in opposition to opposer's summary judgment motion, we have given that declaration no consideration because it was not made of record at trial. *See, e.g., Levi Strauss & Co. v. R. Joseph Sportswear Inc.,* 28 USPQ2d 1464 (TTAB 1993); *see generally* Trademark Board Manual of Procedure (TBMP) (2d Ed., Rev. 2004) at §528.05(a) and cases cited therein. We note that the Board, in its July 29, 2008 order denying opposer's summary judgment motion, advised the parties (at footnote 2) that summary judgment evidence is of record only for purposes of determining the summary judgment motion. Additionally, applicant's assertions in his answer to the notice of opposition and in his final brief on the case are not in themselves evidence of the facts asserted

*Opposer.*

Opposer, The Saul Zaentz Company, d.b.a. Tolkien Enterprises, is a film production company. (Bendich depo. at 7.) In 1976, opposer, by mesne assignments, acquired from the J.R.R. Tolkien estate the exclusive world-wide performance, motion picture and ancillary rights in and to the Tolkien works. (Bendich depo. at 7-17, exh. 270-274; Drotos depo. at 21-22, 32-33.) Since acquiring the rights, opposer has used and licensed the use of various trademarks based on names, objects, places and events depicted in and derived from the Tolkien works (the "Tolkien marks"), for a wide variety of goods and services including jewelry. (Drotos depo. at 50-198, exh. 108-198.) Opposer owns numerous federal trademark registrations of many of the Tolkien marks, covering a wide variety of goods including jewelry. (NOR Exh. 1-38.)[8]

---

except to the extent that they are supported by evidence at trial, or except to the extent that they may have probative value as admissions against interest. *See* TBMP at §706 and cases cited therein. Finally, we add that our decision in this case would have been the same even if we had considered these materials to be evidence of record on applicant's behalf.

[8] Opposer's registrations of Tolkien-related marks include registrations of the marks LORD OF THE RINGS, MIDDLE EARTH, ARAGORN, EVENSTAR, ONE RING TO RULE THEM ALL, MORDOR, ARWEN, MY PRECIOUSSS, SARUMAN, GOLLUM, ELROND, EOWYN, FRODO, GALADRIEL, RIVENDELL, THE ONE RING, and GANDALF. Opposer does not own a registration of the mark involved in this case, i.e., MITHRIL,

### *Applicant.*

Applicant, Joseph M. Bumb, owns a company called American Precious Metals, formed in 1980. (Bumb depo. at 17-18.) He operates a store at the San Jose Flea Market in California, where he buys and sells a range of products including jewelry, collectibles and memorabilia. (Bumb depo. at 21-22.) Applicant also engages in the custom design and manufacture of jewelry. (Bumb depo. at 24-27.)

### *Discussion.*

To review, applicant seeks registration of the mark MITHRIL for various jewelry items. Applicant filed this intent-to-use application on September 12, 2001. Opposer's ground of opposition is lack of bona fide intent under Trademark Act Section 1(b).

### *What is Mithril?*

There is no dispute that "mithril" is the name of a mythical precious metal which figures prominently in the Tolkien works. (Drotos Depo. at 26-27.) An entry for the word appears in the Oxford English Dictionary (2d ed. 1989): "Mithril - Name given by J.R.R. Tolkien to a mythical precious metal." (NOR Exh. 112; Bumb depo. Exh. 4).

---

but instead relies on its common-law rights in that mark. See discussion below regarding opposer's standing.

Applicant confirmed the accuracy of this definition of Mithril in his testimony:

> Q. ... And that's what you understood it to be, right?
> A. That is a metal found in J.R.R. Tolkien's works, yes. ... A precious metal, yes.

(Bumb depo. at 47-48.)

### *Opposer's Burden.*

To prevail in this opposition proceeding, opposer must establish its standing to oppose and at least one statutory ground of opposition to registration of the mark. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000).

### *Opposer's Standing.*

To establish its standing to oppose registration of the MITHRIL mark applicant seeks to register, opposer must prove that it has a real interest in the outcome of this proceeding and thus a reasonable basis for its belief that it would be damaged by issuance of a federal trademark registration of the mark to applicant. *See Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999); *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982); *Time Warner Entertainment Co. v. Jones*, 65 USPQ2d 1650 (TTAB 2002).

9

The record establishes that one of opposer's licensees, Prince August dba Mithril Miniatures, has marketed collectible miniature figurines depicting characters from the Tolkien works in the United States since the late 1980's, using MITHRIL MINIATURES as its trade name and as a trademark pursuant to license from opposer. (Edman depo. at 14-16, exh. 29-30; Drotos depo. at 27, 83-84, exh. 124.)

We find that such use of MITHRIL by opposer's licensee establishes that opposer has a real interest in the outcome of this proceeding and thus a reasonable basis for believing that it would be damaged by issuance of a federal trademark registration of the mark MITHRIL to applicant. We therefore find that opposer has established its standing to oppose registration of applicant's MITHRIL mark.

### *Opposer's Section 1(b) Ground of Opposition.*

Having found that opposer has standing to oppose, we turn now to opposer's Section 1(b) ground of opposition, wherein opposer contends that applicant's MITHRIL application is void ab initio because applicant lacked the requisite bona fide intention to use the mark in commerce as of the application filing date.

In pertinent part, the Trademark Act provides that "[a] person who has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in

10

commerce may request registration of its trademark on the principal register...." Trademark Act Section 1(b)(1), 15 U.S.C. §1051(b)(1).

The Board has held that "...the determination of whether an applicant has a bona fide intention to use the mark in commerce is to be a fair, objective determination based on all the circumstances." *Lane Ltd. v. Jackson International Trading Co.,* 33 USPQ2d 1351, 1355 (TTAB 1994). The Board also has stated that the requirement that an applicant must have a bona fide intent to use the mark in commerce "must be read in conjunction with the revised definition of 'use in commerce' in Section 45 of the Trademark Act, which the Trademark Law Revision Act of 1988 amended to require that such use be 'in the ordinary course of trade, and not made merely to reserve a right in a mark.'" *Commodore Electronics Ltd. v. CBM Kabushiki Kaisha,* 26 USPQ2d 1503, 1507 (TTAB 1993).

Because the determination of whether applicant had the requisite bona fide intent to use the mark is to be based on objective evidence of such intent, "...applicant's mere statement of subjective intention, without more, would be insufficient to establish applicant's bona fide intention to use the mark in commerce." *Lane Ltd., supra*, 33 USPQ2d at 1355. *See also L.C. Licensing Inc. v. Berman*, 86 USPQ2d 1883 (TTAB 2008). The Board has held that

11

> ... applicant's mere statement that it intends to use the mark, and its denial that it lacked a bona fide intent, do not establish, in fact, that it had a bona fide intent to use the mark in commerce when it filed the involved application. Evidence bearing on bona fide intent
>
>> is "objective" in the sense that it is evidence in the form of real life facts and by the actions of the applicant, not by the applicant's testimony as to its subjective state of mind. That is, Congress did not intend the issue to be resolved simply by an officer of applicant later testifying, "Yes, indeed, at the time we filed that application, I did truly intend to use the mark at some time in the future."

*Research In Motion Ltd. v. NBOR Corp.,* 92 USPQ2d 1926, 1931 (TTAB 2009), quoting from J.T. McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, §19:14 (4th ed. 2009).

"Opposer has the initial burden of demonstrating by a preponderance of the evidence that applicant lacked a bona fide intent to use the mark on the identified goods." *Boston Red Sox Baseball Club LP v. Sherman*, 88 USPQ2d 1581, 1587 (TTAB 2008). If opposer meets this initial burden of proof, the burden of production shifts to applicant "...to rebut the opposer's prima facie case by offering additional evidence concerning the factual circumstances bearing upon its intent to use its mark in commerce." *Commodore Electronics Ltd., supra,* 26 USPQ2d at 1507 n.11.

One way in which an opposer can establish its prima facie case of no bona fide intent is by proving that

applicant has no documentary evidence to support its
allegation in the application of its claimed bona fide
intent to use the mark in commerce as of the application
filing date.  The Board has held:

> ... absent other facts which adequately explain or
> outweigh the failure of an applicant to have any
> documents supportive of or bearing upon its
> claimed intent to use its mark in commerce, the
> absence of documentary evidence on the part of an
> applicant regarding such intent is sufficient to
> prove that the applicant lacks a bona fide
> intention to use the mark in commerce as required
> by Section 1(b).

*Commodore Electronics Ltd., supra*, 26 USPQ2d at 1507.  *See
also Boston Red Sox Baseball Club LP, supra,* 88 USPQ2d at
1587 ("The absence of any documentary evidence on the part
of an applicant regarding such intent constitutes objective
proof sufficient to prove that the applicant lacks a bona
fide intention to use its mark in commerce."); *Research In
Motion Ltd., supra*, 92 USPQ2d at 1931.

Applying these principles in the present case, we find
as follows.

Applicant filed his intent-to-use application for
MITHRIL on September 12, 2001.  Prior to that, on August 14,
2001, he had registered the domain names mithrilsilver.com,
mithrilsilver.net and mithrilsilver.org.  (Bumb depo. at 37-
40.)  Applicant has never taken any steps to construct or

operate a website under the "mithrilsilver" domain names. (Bumb depo. at 68-70, exh. 14.)

Applicant has admitted that aside from documents filed with the USPTO pertaining to his intent-to-use trademark application and documents pertaining to his registration of the domain names, applicant has no documents relating to his adoption of or intent to use the MITHRIL mark in commerce. (Bumb depo. at 77-78; RFP Nos. 1, 5, 7 and 9 (NOR Exh. 43).)

Pursuant to the authorities discussed above, we find that applicant's lack of documentary evidence suffices to establish opposer's prima facie case that applicant lacked the requisite bona fide intent to use the mark in commerce as of the application filing date.

Moreover, we find additional evidence establishing opposer's prima facie case in applicant's statements made during his testimony deposition (taken by opposer). First, applicant testified that he adopted the MITHRIL mark because of it's significance in the Tolkien works:

> A. ... The term 'mithril' is employed by J.R.R. Tolkien in his works.
> Q. And the idea that you had to use that came from Tolkien's works?
> A. Reading the books, right.

(Bumb depo. at 46-47.)

> ... And I was trying to figure out a name that would be, I would say, synonymous with my mind, my projections of my business. And they were, this association with Mithril goes back with me when I first read the Hobbit. And I would say

14

that it was just having that familiarity with
the Middle Earth and Tolkien's realm that it
came to me in a thought.
(Bumb depo. at 37.)

Second, applicant's testimony demonstrates that applicant's intention as of the application filing date was, at most, merely to reserve a right in the term MITHRIL by registering the domain names and filing the trademark application, without the requisite corresponding bona fide intent to actually use the mark in commerce.  For example, applicant testified:

Q.  And those are the domain names that
you –
A.  I maintained, yes.
Q.  And you did that all before applying
for the trademark application, right?
A.  Yes, I almost didn't really even
consider the trademark part of it until as an
afterthought.  As you can see, there's almost a
month in between.
Q.  Why is it that you decided to try to
apply for a trademark for Mithril?
A.  It seemed like the right thing to do.
In a business sense, if you are going to make
an effort and go down a certain path, you
wouldn't want to go down the path and then
discover that you didn't cover all your bases.
(Bumb depo. at 40.)

Q.  What kinds of jewelry were you going
to call Mithril?
A.  Well, Mithril, my concept was more the
material than any, actually a specific item.
Q.  So you had no specific item?
A.  I listed in the trademark application
specific items because those are items that end
up, people asking for.  And so it was, the idea
was to develop a unique product line, specific
to my creative abilities and have Mithril be an

15

alloy material that would have certain properties that would be reasonable but also not just be silver. It would be of a higher – different properties so it wouldn't tarnish; it might be harder, have a higher sheen to it.

(Bumb depo. at 41-42.)

Q. And who were you going to sell this jewelry to once it was made?

A. Well, I hoped to develop my own market for it. So it would be – my local, you know, experimentally, my local industry but, you know, potentially, via my web site to attract a worldwide audience or market.

...

Q. And did you have any marketing plans on how you were going to market this jewelry?

A. Just – you say marketing plans, no, designing a web site and try just to go through that avenue. I'm not sure what it all entails. That's part of the process of Internet word of mouth.

...

Q. Did you have a price at which you planned to sell this jewelry?

A. No.

...

Q. Aside from the Internet did you plan to sell this jewelry in any retail outlets?

A. No plans.

Q. Have you ever made a piece of jewelry with silver and gold that you planned to use as a prototype for Mithril jewelry?

A. No.

(Bumb depo. at 43-44.)

Q. And did you have any plans for a particular product line?

A. No, not specifically. I mean just the opportunity to create something in the future.

(Bumb depo. at 53.)

Q. I guess what I'm trying to understand is whether you were going to make a line of jewelry and call it Mithril or LOTR or whether there were going to be two separate lines of jewelry.

16

A. I had no intent either way.
Q. Okay.
A. At this point I was just applying for the trademark or first the domain and then cover the trademark in lieu of something growing. No intent.

(Bumb depo. at 52.)[9]

We find that applicant's testimony, considered in its entirety, establishes that he had nothing more than a vague plan for, or conception of, how he would actually use the MITHRIL mark in commerce on jewelry, and that he filed his trademark application merely to reserve a right in the mark. Indeed, applicant's statements that he filed the trademark application "in lieu of something growing" and "just for the opportunity to create something in the future," essentially are his admissions that he filed the application merely to reserve a right in the mark. *See Research In Motion Ltd., supra*, 92 USPQ2d at 1931 (applicant's stated belief that the applied-for mark would be "a good mark for future use" does not establish a bona fide intent to use).

In short, we find that applicant's testimony, and the fact that applicant has no documentary evidence to support his claim of bona fide intent to use the mark as of the application filing date, establish opposer's prima facie case of no bona fide intent.

---

[9] LOTR is the mark involved in Opposition No. 91156518. See above at footnote 1.

Opposer having made out its prima facie case, the burden shifts to applicant to rebut that prima facie case by producing evidence which would establish that he had the requisite bona fide intent to use the mark when he filed his application.  *See Commodore Electronics Ltd., supra*, 26 USPQ2d at 1507.

Applicant presented no testimony or other evidence at trial.  Applicant's mere assertions throughout this proceeding of his subjective intent to use the mark do not constitute objective evidence of such intent which would rebut opposer's prima facie showing of no bona fide intent. *See Lane Ltd., supra*, 33 USPQ2d at 1355; *Research In Motion Ltd. v. NBOR Corp., supra,* 92 USPQ2d at 1931.

Applicant asserts for the first time in his brief that, on April 25, 2001, opposer sent him a cease and desist letter threatening legal action if he were to use the MITHRIL mark.[10]  Applicant further states in his brief that upon receipt of the letter, he "voluntarily complied with the cessation of development of his MITHRIL product line." (Applicant's brief at 4.)  Applicant argues that opposer's claim of no bona fide intent is based, unfairly, on applicant's compliance with the cease and desist letter.

---

[10] At various points in his testimony, applicant made reference to opposer's cease and desist letter, but his assertion that he received the cease and desist letter on that particular date, i.e., April 25, 2001, is made for the first time in his appeal brief.

However, applicant has not made the alleged April 25, 2001 letter of record, nor has he presented any other evidence to support a finding that opposer sent such a letter to applicant on that date or at any time prior to the September 12, 2001 intent-to-use application filing date. In footnote 2 of its reply brief, opposer acknowledges that it sent a cease and desist letter to applicant, but asserts that the letter was not sent until after the application was filed (which, as opposer reasonably points out, is the earliest that opposer could have been on notice of applicant's intention to register the mark).  Moreover, applicant's contention that he received and complied with the cease and desist letter prior to the application filing date would seem to be inconsistent with the fact that, despite the alleged pre-application receipt of the letter, he proceeded to file the application for registration of the mark.

Applicant's receipt of a cease and desist letter after the application filing date might have helped to explain a decision, made after the filing date, to cease development of a MITHRIL product line until after applicant's rights in the mark had been resolved.  However, such a letter received after the application filing date, and applicant's asserted compliance therewith, does not help to establish that applicant had a bona fide intent to use the mark when he

filed the application on September 12, 2001, which is the date at issue here. *Cf. L.C. Licensing Inc. v. Berman, supra,* 86 USPQ2d at 1892 ("Applicant's decision to forgo a business model until after the opposition is decided does not explain his failure to have any documents whatsoever at the time the application was filed that showed an intent to use the mark.").

Thus, we are not persuaded by applicant's argument that opposer's cease and desist letter, which on this record is not shown to have been received prior to the application filing date, explains or excuses the absence of documentary evidence or any other evidence to support applicant's claim that he had a bona fide intent to use the mark in commerce when he filed his application on September 12, 2001.

For all of the reasons discussed above, we find that the preponderance of the evidence establishes that applicant lacked the requisite bona fide intention to use the MITHRIL mark in commerce when he filed his intent-to-use application to register that mark. Specifically, applicant has no documentary evidence to support his bona fide intent claim, a fact which suffices in itself to establish that applicant lacked a bona fide intention to use the mark when he filed his application. *See Commodore Electronics Ltd., supra,* 26 USPQ2d at 1507; *Research In Motion Ltd., supra*, 92 USPQ2d at 1931; and *Boston Red Sox Baseball Club LP, supra,* 88 USPQ2d

at 1587.  Applicant presented no evidence at trial to support a contrary finding.  *See Research In Motion Ltd., supra*, 92 USPQ2d at 1931 ("The absence of documentation coupled with applicant's failure to take testimony or offer any evidence supporting its bona fide intent to use convince us that applicant did not have a bona fide intent to use the mark.")  Moreover, applicant's testimony includes what essentially are his admissions that he filed his intent-to-use application merely to reserve a right in the MITHRIL mark "in lieu of something growing" and "just for the opportunity to create something in the future."

We conclude that opposer has established its Section 1(b) ground of opposition to registration of applicant's MITHRIL mark based on applicant's lack of bona fide intent to use the mark when he filed his intent-to-use application to register that mark.  We therefore also conclude that the application is void ab initio.  We have considered all of applicant's arguments to the contrary, but we are not persuaded by them.

### Conclusion and Decision.

Based on the entirety of the evidence of record, and for all of the reasons discussed above, we conclude that opposer has established its standing to oppose registration

of applicant's MITHRIL mark, and has established its Section

1(b) ground of opposition to registration of that mark.


**Decision:  The opposition is sustained.**