GAY TOYS, INC., Appellant,

v.

McDONALD'S CORPORATION, Appellee.

No. 78–572.

United States Court of Customs and Patent Appeals.

Nov. 9, 1978.

Robert G. Mentag, Detroit, Mich., attorney of record, for appellant.

Robert E. Browne, Robert E. Wagner, Wagner & Aubel, Chicago, Ill., attorneys of record, for appellee; Santiago Rios, Noel Kaplan, Oak Brook, Ill., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

Appeal from a decision of the Trademark Trial and Appeal Board (board), sustaining an opposition to registration of BIG MAC, application serial No. 83,968, for failure of the application to reflect use of the mark on or with the goods in commerce. We affirm.

## · Background

McDonald's Corporation (McDonald's) opposed registration of BIG MAC by Gay Toys, Inc. (Toys), asserting that its use on toy trucks would be likely to cause confusion with McDonald's trademark BIG MAC, registration Nos. 970,987 and 989,692, for restaurant services and carry-out foods, and that Toys' goods are similar to toys sold by McDonald's and its licensees under the mark BIG MAC.

In its application, dated April 15, 1976, Toys claimed use of BIG MAC for toy trucks since April 1, 1976. On that date, according to the deposition of Toys' president, a salesman displayed a plaster mock-up of a truck at a trade show; the mock-up was visually identical to an actual toy; the mock-up nowhere bore the BIG MAC mark; the salesman had special promotion sheets for use in conjunction with the mock-up. Although the salesman took orders, Toys did not obtain molds necessary for production of commercial models until the end of May.

The application alleges use "on advertising literature"—the special promotion sheets—"associated with the goods".[1]

McDonald's moved for summary judgment, on the grounds that Toys had not used BIG MAC as a trademark on goods in commerce prior to its filing date and had knowingly submitted false specimens.

Noting that only plaster "models" were used in conjunction with the mark prior to the filing date, the board granted the motion, holding that because the actual goods were not sold or transported in commerce, or displayed in connection with the mark, Toys had not used BIG MAC in commerce within the meaning of § 45 of the Lanham Act (Act), 15 U.S.C. § 1127, and its application was therefore "void *ab initio.*" Use of BIG MAC on the promotion sheets being considered mere advertising, not use on a display associated with the goods, it could not, said the board, serve as foundation for the application.

## Issue

The dispositive issue is whether the plaster mock-up constituted "goods" within the meaning of the Act.[2]

## OPINION

Section 1 of the Act, 15 U.S.C. § 1051, permits registration of a trademark "used in commerce." Section 45 states: "a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith * * *." The essence of McDonald's motion is that, as of either April 1 or April 15, 1976, Toys had no actual toy trucks, and therefore no "goods" with which BIG MAC could have been associated, as required by §§ 1 and 45. Toys says the Act does not prescribe the physical structure or composition of "goods," and thus it is immaterial whether the product be hand-made or machine-made, and whether it be of plaster, plastic, wood, or other substance.

Section 1 of the Act requires the applicant to specify "the goods in connection with which the mark is used * * *." The goods specified in Toys' application are "toy trucks." Though the plaster mock-up

---

1. The application also alleges use "by labels affixed to the goods." Admitting that no labels were used, Toys offered before the board to delete that phrase by amendment. The board did not act on the amendment, and it is not before us.

2. We do not reach the issue whether the promotion sheets were associated displays within the meaning of § 45. Nor do we reach McDonald's allegation that Toys was guilty of fraud on the Patent and Trademark Office, which the board did not mention.

was described as visually similar to actual toy trucks which can be formed of plastic in production molds, visual similarity alone cannot convert a plaster mock-up into a toy truck. Toys correctly states that "goods" may be formed in a variety of materials. In so saying, Toys begs the question, which is not what its toy trucks are made of, but whether its plaster mock-up was a toy truck. There is no evidence of record that the plaster mock-up was actually used as a toy, or was suitable for use as a toy.[3] The plaster mock-up having failed to correspond to the description of the goods, Toys did not use the mark in commerce in association with the goods. Its application was therefore void.[4]

The decision of the board is *affirmed.*

*AFFIRMED.*

BALDWIN, J., concurs in result.

---

**3.** On appeal, Toys says the plaster mock-ups were "working models." The record does not support that assertion.

**4.** Toys could have simply filed a new application. All that it could have obtained on this appeal was an April, 1976 filing date. McDonald's priority of use was unquestioned. Toys' persistence in pursuing the issue here constitutes a waste of judicial resources.