THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
September 24, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*United Global Media Group, Inc.*
*v.*
*Bonnie Tseng*

_____

Opposition No. 91200786

_____

Aaron Silverstein of Saunders & Silverstein LLP for United Global Media Group, Inc.

Bonnie Tseng *pro se*.

_____

Before Seeherman, Bergsman and Ritchie, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Bonnie Tseng, dba BeauTV, ("Applicant") filed a use-based application on the Principal Register to register the mark **BeauTV**, in standard character form, for "providing information about beauty," in Class 44.[1]

United Global Media Group, Inc. ("Opposer") opposed the registration of applicant's mark on the following grounds:

---

[1] Serial No. 85155593, filed October 19, 2010. Applicant claimed January 1, 1999 as her dates of first use anywhere and first use in commerce.

1.     Likelihood of confusion under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d); and

2.     Applicant's application is void *ab initio* because applicant was not using the mark when she filed her application and has never used the mark sought to be registered.[2]

With respect to its likelihood of confusion claim, opposer pleaded ownership of eight BEAUTY-formative registered marks and two pending BEAUTY-formative applications "for a variety of entertainment and educational services related to the production and distribution of multimedia properties in the field of beauty, healthcare, and cosmetics, as discussed *infra*."[3]

---

[2] Opposer also asserted a ground of dilution. However, it did not properly plead the dilution claim because it did not allege that its marks became famous prior to the filing date of applicant's application or any other date of use upon which applicant may rely. Section 43(c) of the Trademark Act, 15 U.S.C. § 1025(c) ("Subject to the principles of equity, the owner of a famous mark that is distinctive ... shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark … in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark."). *See also Toro Co. v. ToroHead Inc.,* 61 UPSQ2d 1164, 1174 (TTAB 2001) ("We hold that in the case of an intent-to-use application, an owner of an allegedly famous mark must establish that its mark had become famous prior to the filing date of the trademark application or registration against which it intends to file an opposition or cancellation proceeding."). Moreover, in its brief, opposer did not present any argument regarding dilution. Where a party fails to reference a pleaded claim in its brief, the Board will deem the clam to have been waived. *See Knight Textile Corp. v. Jones Investment Co.,* 75 USPQ2d 1313, 1314 n.4 (TTAB 2005) (where opposer presented no arguments in its brief regarding the claim of dilution, opposer is deemed to have waived the claim). In view thereof, we give no further consideration to this claim.

[3] Notice of Opposition ¶¶ 2 and 11. Opposer originally pleaded ownership of eight registrations. One of the registrations, Registration No. 3086867, was cancelled during this proceeding. Also, opposer pleaded ownership of application Serial Nos. 85045748 and 85289521 which matured into Registration Nos. 4080802 and 4101422 during this proceeding. When an opposer pleads ownership of the underlying applications in the notice of opposition, the opposer may make the registrations which issue during the opposition of record without having to amend the notice of opposition to assert reliance on the

2

In her answer, applicant admitted that opposer owns its pleaded registrations and denied the remaining allegations in the notice of opposition.

## I.     Evidentiary Issues

A.     Opposer's pleaded registrations.

Opposer attached copies of the following registrations to its notice of opposition:[4]

1.     Registration No. 3077921 for the mark **The Beauty Network**;[5]

2.     Registration No. 3451561 for the mark **Beauty MD**;[6]

3.     Registration No. 3688141 for the mark **BEAUTY TV**;[7]

4.     Registration No. 3741286 for the mark **THE BEAUTY CHANNEL**;[8] and

5.     Registration No. 3936977 for the mark **SYNCHRONIZING BEAUTY**.[9]

---

registrations. *See UMG Recordings, Inc. v. Charles O'Rourke,* 92 USPQ2d 1042, 1045 n.12 (TTAB 2009).

[4] Opposer also attached a printout from the USPTO assignment database indicating that none of the registrations has been assigned.

[5] Registered on April 4, 2006; Section 8 affidavit accepted.  Opposer disclaimed the exclusive right to use the word "Network."

[6] Registered on June 17, 2008.  Opposer disclaimed the exclusive right to use the term "MD."

[7] Registered on September 29, 2009.  Opposer disclaimed the exclusive right to use the term "TV."

[8] Registered on January 19, 2010.  Opposer disclaimed the exclusive right to use the word "Channel."

[9] Registered on March 29, 2011.  Opposer disclaimed the exclusive right to use the word "Beauty."

With respect to the first four registrations noted above, the copies of the registrations filed by Opposer were neither: (a) prepared and issued by the United States Patent and Trademark Office, showing both the current status and current title to the registrations; nor (b) printed from the electronic database records of the USPTO showing the current status of the registrations.

Trademark Rule 2.122(d) provides the manner in which a plaintiff may properly make its pleaded registration(s) of record:

> (1)    A registration of the opposer or petitioner pleaded in an opposition or petition to cancel will be received in evidence and made part of the record if the opposition or petition is accompanied by an original or photocopy of the registration prepared and issued by the United States Patent and Trademark Office showing both the current status of and current title to the registration, or by a current printout of information from the electronic database records of the USPTO showing the current status and title of the registration; or
>
> (2)    A registration owned by any party to a proceeding may be made of record in the proceeding by that party by appropriate identification and introduction during the taking of testimony or by filing a notice of reliance, which shall be accompanied by a copy (original or photocopy) of the registration prepared and issued by the Patent and Trademark Office showing both the current status of and current title to the registration. The notice of reliance shall be filed during the testimony period of the party that files the notice.

Copies of registrations prepared and issued by the USPTO "amount to an acknowledgment by the Office as to what the Office records show with respect to a particular registration as of the time of the mailing of the copies, and thus are sufficient to constitute a prima facie showing of the status and title to the registration." *Peters Sportswear Co., Inc. v. Peter's Bag Corp.*, 187 USPQ 647, 647

4

(TTAB 1975), *quoted in Maybelline Co. v. Matney*, 194 USPQ 438, 439 (TTAB 1977). In other words, they are sufficiently trustworthy to be placed into evidence. *Peters Sportswear,* 187 USPQ at 650. As the Board further explained in *Peters Sportswear,* the problem with unauthenticated copies of pleaded registrations is that they

> … are insufficient to meet the requirements of Trademark Rule 2.122(b) [now subsection d] and hence are incompetent to establish the current status of opposer's pleaded registrations, that is, to show that such registrations are still subsisting. Moreover, the fact that the copies of the registration certificates filed by opposer indicate on their face that the registrations originally issued to opposer cannot serve to show that opposer is still the owner thereof and thus the "registrant" within the meaning of Section 7(b) of the Act of 1946.

*Id.*

Here, opposer merely attached as exhibits to its notice of opposition copies of the original certificates of its pleaded registrations which issued years earlier. The Board has routinely held that the submission of such a copy of a pleaded registration, by itself, is insufficient for purposes of establishing the continuing subsistence and the current title of the registration and, therefore, does not suffice to make the registration of record. *See, e.g., Teledyne Techs., Inc. v. Western Skyways, Inc.,* 78 USPQ2d 1203, 1206 (TTAB 2006) ("[i]nasmuch as the copy attached to the petition is not a status and title copy prepared by the Office, the submission does not conform to Rule 2.122(d)"). *See also* TBMP § 704.03(b)(1)(A) (June 2014) and authorities cited therein. Further, opposer did not otherwise establish the status, such as by submitting under a notice of reliance printouts from

USPTO databases showing status, or taking testimony sufficient to establish status, pursuant to Trademark Rule 2.122(d)(2). Thus, the above-noted registrations were not properly made of record. As the Federal Circuit noted in *Hewlett-Packard Co. v. Olympus Corp.*, 931 F.2d 1551, 18 USPQ2d 1710 (Fed. Cir. 1991):

> The Trademark Rules provide a means for implementing this proof of a *prima facie* case. They require that, in an opposition proceeding, registrations may be entered into evidence by (1) furnishing two copies of each registration prepared and issued by the Patent and Trademark Office showing both the *current status* of and *current title* to the registration; (2) appropriate identification and introduction of the registrations during the taking of testimony; or (3) filing a notice of reliance on the registrations during Opposer's testimony period. 37 C.F.R. §2.122(d) (emphasis added). These rules are simple and clear, but Hewlett did not follow them.[10]

*Id.*, 18 USPQ2d at 1713 (Court affirmed Board dismissal of the opposition for failure to properly prove the registrations where the defendant had admitted only issuance of pleaded registrations to the plaintiff "on the dates indicated" but had denied that the registrations were valid and subsisting, and the parties agreed the attached copies of the registrations did not show status or title).[11]

The fact that applicant admitted in her answer that opposer owned the registrations does not suffice to show their current status. The *Hewlett-Packard* Court's discussion of *Tiffany & Co. v. Columbia Indus., Inc.*, 455 F.2d 582, 173 USPQ 6 (CCPA 1972) is instructive. In *Tiffany*, the issue before the Court of

---

[10] Board rules were amended in 2007 to allow an even easier method of proving the validity of pleaded registrations, i.e., through submission of USPTO records, as discussed earlier in this opinion.

[11] Also, "a plaintiff's mere inputting of a registration number when prompted by ESTTA, the Board's on-line filing system, to list any registration upon which the plaintiff relies," is not sufficient to make the registration(s) of record. *Melwani v. Allegiance Corp.*, 97 USPQ2d 1537, 1540 (TTAB 2010).

Customs and Patent Appeals was not whether the plaintiff had complied with the provisions of Rule 2.122 for proving pleaded registrations, but whether the defendant's answer excused plaintiff from having to prove the registrations. 173 USPQ at 7. The defendant in *Tiffany*, represented by counsel, was found to have "admitted 'the registrations referred to in the notice of opposition.'" *Id*. at 8. Moreover, the panel did not believe that the defendant was deprived of fair notice of the case it had to meet and that "it would work an injustice on appellant under these circumstances" were it not able to rely on the plaintiff's pleading and defendant's admission, particularly in view of the defendant having originally been presented with a copy of plaintiff's registration during examination, as the basis for a refusal of registration (subsequently withdrawn). *Id*. at 8.

These concerns about the fairness of notice and possible injustice apparently were not present in the *Hewlett-Packard* case, which involved more specific pleadings by both parties. Likewise, in the case currently before us, applicant admitted only opposer's ownership of the registrations, not the status of the registrations *per se*, and opposer, though represented by counsel, did not include allegations relating to the validity of the registrations it claimed to own.[12] We conclude that it would work an injustice to hold that applicant, under these circumstances, must deny unpleaded matter to avoid admitting what, at best, might be considered an implied allegation in opposer's pleading, *i.e.*, validity and status of the registrations it claimed to own. Accordingly, we do not view applicant as having

---

[12] This case is also unlike the *Tiffany* case in that the instant opposer's pleaded registrations were not cited against the instant applicant during examination.

admitted the registrations in a manner that would excuse opposer from having to prove their validity and status.

Because opposer failed to comply with Trademark Rule 2.122(d), opposer's four pleaded registrations noted above are not of record. Nor are the issue dates for these registrations substantially contemporaneous with the filing of the notice of opposition, such that the copy of each issued registration alone would be sufficient because the date the registration was issued was very near the date the opposition was filed. *See* TBMP § 704.03(b)(1)(A) (2014); *Royal Hawaiian Perfumes, Ltd. v. Diamond Head Prods. of Haw., Inc.*, 204 USPQ 144, 146 (TTAB 1979) (status and title copy of pleaded registration mailed by USPTO on January 12, 1977 was reasonably contemporaneous with the notice of opposition filed on March 14, 1977). In contrast, we will accept the copy of the fifth registration noted above (Registration No. 3936977 for the mark SYNCHRONIZING BEAUTY) as being sufficient to make it of record because the date that registration was issued (March 29, 2011) is reasonably contemporaneous with the date the notice of opposition was filed (July 20, 2011). Further, as noted *supra* in note 3, during its testimony period, opposer filed a notice of reliance on, *inter alia*, copies of two additional registrations: Registration No. 4080802 (**BEAUTY EVERYWHERE),** and Registration No. 4101422 (**THE BEAUTY CHANNEL)**, both of which were printed from the electronic database records of the USPTO showing the current status and current title to the registrations. *See Res. In Motion Ltd. v. NBOR Corp.*, 92 USPQ2d 1926, 1928 (TTAB 2009) (permitting proof of a pleaded registration by the submission of a

8

printout of information from the electronic database records of the USPTO through a notice of reliance although not expressly authorized by Trademark Rule 2.122(d)(2) in an effort to "liberalize the means for proving a pleaded registration").

In sum, opposer's Registration Nos. 3936977, 4080802 and 4101422, details of which are shown below, are properly of record.

1.    Registration No. 3936977 (Principal Register) for the mark **SYNCHRONIZING BEAUTY**, in standard character form, for the following services:

> Providing audio-visual information in the fields of beauty care and health, online via a global computer network; Providing information relating to beauty care and health, online via a global computer network; Providing reviews, commentary, and other information relating to beauty care and health, online via a global computer network; Providing a website featuring information in the fields of beauty care and health; Providing a website featuring videos, images, and other audiovisual or multimedia materials in the fields of beauty care and health, in Class 44;[13]

2.    Registration No. 4080802 (Principal Register) for the mark **BEAUTY EVERYWHERE**, in standard character form, for the following services:

> Providing audio-visual information in the fields of beauty care and health, online via a global computer network; Providing information relating to beauty care and health, online via a global computer network; Providing reviews, commentary, and other information relating to beauty care and health, online via a global computer network; Providing a website featuring information in the fields of beauty care and health; Providing a website featuring videos, images, and other audiovisual or multimedia

---

[13] Registered on March 29, 2011.  Opposer disclaimed the exclusive right to use "Beauty."

materials in the fields of beauty care and health, in Class 44;[14] and

3.     Registration No. 4101422 (Principal Register under Section 2(f)) for the mark **THE BEAUTY CHANNEL**, in standard character form, for the following services:

> Providing audio-visual information in the fields of beauty, salon services, hair, nails, makeup, facials, spa services and treatments, hair loss and treatments, waxing, and electrolysis, lasers, cosmetic surgery, health, nutrition and anti-aging treatments via electronic communications networks, mobile devices and networks, or device-to-device communications; Providing information online relating to beauty, salon services, hair, nails, makeup, facials, spa services and treatments, hair loss and treatments, waxing, and electrolysis, lasers, cosmetic surgery, health, nutrition and anti-aging treatments via electronic communications networks, mobile devices and networks, or device-to-device communications; Providing a web site featuring videos, images, and other audiovisual or multimedia materials featuring information in the fields of beauty, salon services, hair, nails, makeup, facials, spa services and treatments, hair loss and treatments, waxing, and electrolysis, lasers, cosmetic surgery, fashion, health, nutrition and anti-aging treatments; Providing reviews, commentary, and other information relating to beauty, salon services, hair, nails, makeup, facials, spa services and treatments, hair loss and treatments, waxing, and electrolysis, lasers, cosmetic surgery, health, nutrition and anti-aging treatments via electronic communications networks, mobile devices and networks, or device-to-device communication, in Class 44.[15]

---

[14] Registered on January 3, 2012.  Opposer disclaimed the exclusive right to use the word "Beauty."

[15] Registered on February 21, 2012.

B.   Applicant's notice of reliance.

Applicant filed a notice of reliance on 18 documents. Opposer filed a motion to strike virtually all of the documents on the ground that they "consist of unauthenticated correspondence, press releases and unofficial records."[16] None of the evidence sought to be excluded is outcome determinative. Given this fact, coupled with the number of objections, we see no compelling reason to discuss the specific objections one at a time. As necessary and appropriate, we will point out in this decision any limitations applied to the evidence or otherwise note that the evidence cannot be relied upon in the manner sought. While we have considered all the evidence and arguments of the parties, we do not rely on evidence not discussed herein.

## II.   The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), applicant's application file. In addition, the parties introduced the following testimony and evidence:

A.   Opposer's evidence.

Opposer's pleaded Registration No. 3936977 for the mark **SYNCHRONIZING BEAUTY,** filed with the notice of opposition, which we have found properly of record.

Opposer also filed a notice of reliance on the following items:

---

[16] Opposer's motion to strike, p. 1 (TTABVue 31, p. 2).

11

1. Copies of Registration No. 4080802 for the mark **BEAUTY EVERYWHERE** and Registration No. 4101422 for the mark **THE BEAUTY CHANNEL** printed from the electronic records of the USPTO and showing the current status and title to the registrations;

2. Applicant's amended responses to opposer's interrogatory Nos. 15, 16, 18, 19, 31, 34, 36, 37, 38, 40 and 41;

3. Applicant's responses to opposer's requests for admission Nos. 1 and 16;

4. Opposer's second set of requests for admission to which applicant failed to respond; and

5. Applicant's responses to opposer's request for production of documents. Although documents produced in response to a document production request cannot be made of record by notice of reliance, *see* Trademark Rule 2.120(j)(3)(ii), we may consider applicant's written responses to opposer's request for production of documents to the extent that she has responded that no documents exist. *See Pioneer Kabushiki Kaisha v. Hitachi High Technologies America, Inc.,* 74 USPQ2d 1672, 1679 (TTAB 2009) (a party may rely on the response that responsive documents do not exist). In this regard, we construe applicant's responses that a specific document request is "not applicable" as indicating there is no responsive document.

B.    Applicant's evidence.

Applicant submitted the notice of reliance noted above in our discussion of evidentiary issues and discussed more fully below.

### III.    Standing

Because opposer has properly made of record one of its pleaded registrations and two pleaded applications that became registrations, opposer has established its standing. *Cunningham v. Laser Golf Corp.,* 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000); *Lipton Indus., Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982).

### IV.    Whether applicant's application is void *ab initio* for nonuse?

In an application based on use in commerce under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), the applicant must use the mark in commerce on or in connection with all the goods and services listed in the application as of the application filing date.  *See* Trademark Rule 2.34(a)(1)(i), 37 CFR § 2.34(a)(1)(i).

Section 45 of the Trademark Act, 15 U.S.C. § 1127, provides that a service mark is used in commerce "on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State."

The services identified in a use-based service mark application must be rendered before the filing of a service mark application.

> [A] service mark applicant seeking to meet the use requirements of Section 1(a) of the Trademark Act of 1946, 15 U.S.C. § 1051(a), must (1) use the mark in the sale or advertising of a service and (2) show that the

> service was either rendered in interstate commerce or rendered in more than one state or in this and a foreign country by a person engaged in commerce.

*Aycock Eng'g Inc. v. Airflite Inc.,* 560 F.3d 1350, 90 USPQ2d 1301, 1306 (Fed. Cir. 2009). *See also Gay Toys, Inc. v. McDonald's Corp.,* 585 F.2d 1067, 199 USPQ 722, 723 (CCPA 1978) (because applicant did not use the mark in commerce in association with the goods at the time it filed the application, its application was void); *In re Cedar Point, Inc.,* 220 USPQ 533, 535 (TTAB 1983) (rights in mark arise through its use in connection with existing services); *Greyhound Corp. v. Armour Life Ins. Co.,* 214 USPQ 473, 474 (TTAB 1982) (application was void because at the time it was filed the mark had not been used in the sale or advertising of existing services); *Intermed Commc'ns, Inc. v. Chaney*, 197 USPQ 501, 507-08 (TTAB 1977) ("The statute requires not only the display of the mark in the sale or advertising of services but also the rendition of those services in order to constitute use of the service mark in commerce.").

Based on the record in this case, we find that opposer has shown that applicant did not use the mark **BeauTV** to identify the services of "providing information about beauty" prior to her October 10, 2010 filing date. We recount below the evidence.

Applicant admitted that her services of "providing information about beauty" are related to "electronic publishing, namely, publishing of blogs featuring information in the fields of beauty care and cosmetics."[17]

---

[17] Applicant's response to opposer's request for admission No. 16 (TTABVue 23, p. 31).

In response to opposer's interrogatories relating to the identity of her purchasers (Interrogatory Nos. 15, 16 and 37) and where she advertised her services (Interrogatory Nos. 18 and 19), applicant responded that the interrogatories were "inapplicable."[18]   Likewise, in response to opposer's request for production of documents relating to the first sale (Request No. 11), financial statements from the sale of her services (Request No. 12), annual revenues from the sale of her services (Request No. 15), representative samples of advertising or promotional materials (Request No. 18), business plans relating to the services she is offering (Request No. 19), and documents identifying the purchasers to whom she intends to render her services (Request No. 26), applicant responded that the requests were "inapplicable."[19]

Finally, opposer served a second set of requests for admission seeking admissions regarding applicant's use of her mark; however, applicant did not serve any responses.[20]  "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Fed. R. Civ. P. 36(a) (3).  Those requests for admission include the following requests:

---

[18] Applicant's responses to opposer's interrogatories (TTABVue 23, pp. 20-27).

[19] Applicant's responses to opposer's request for production of documents (TTABVue 23, pp. 35-42).

[20] Opposer's second requests for admission (TTABVue 23, pp. 54-60).

> Request No. 49
>
> Admit that applicant has not rendered "providing information about beauty" services through her beautv.com website for at least three years [since November 11, 2009].
>
> Request Nos. 51-63
>
> Admit that applicant cannot document rendering of "providing information about beauty" services under Applicant's Designation for the year _____ [listing each year from 2000-2012 in the separate requests].

Through discovery, opposer was unable to obtain any evidence documenting applicant's use of her mark **BeauTV**, and based on the discovery requests and responses that opposer made of record, opposer has made out a *prima facie* showing of nonuse by applicant. In response to opposer's evidentiary showing, applicant, in her notice of reliance, submitted a number of documents, none of which showed use of the mark **BeauTV**.[21] Opposer objected to the submission of this evidence.

At this point, we offer the following regarding notices of reliance. Printed publications, such as books and periodicals, available to the general public in libraries or of general circulation among members of the public or that segment of the public which are relevant to the proceeding, may be introduced through a notice of reliance. Trademark Rule 2.122(e), 37 CFR § 2.122(e). The purpose of Rule 2.122(e) is to expedite and facilitate the presentation and evaluation of such evidence.

> [Rule 2.122(e)] is intended to facilitate the introduction of books and publications for what they show on their face subject to the safeguard that the party against whom the

---

[21] Applicant's notice of reliance (TTABVue 28).

> evidence is offered is readily able to corroborate or refute the authenticity of what is proffered. The assumption underlying the rule is that a party is or may readily become familiar with printed matter in libraries open to the public or in general circulation. The burden of showing public availability, in case of reasonable doubt, lies on the proponent of the evidence. Private promotional literature is not presumed to be publicly available in the sense of being readily accessible for inspection in libraries open to the public or of such currency that the other party is presumably familiar with it.

*Glamorene Prod. Corp. v. Earl Grissmer Co.*, 203 USPQ 1090, 1092 n.5 (TTAB 1979).

In 2010, the Board made an exception to Rule 2.122(e) and held that a document obtained from the Internet may be admitted into evidence in an *inter partes* proceeding pursuant to notice of reliance in the same manner as printed publications in general circulation, in accordance with 37 C.F.R. §2.122(e), provided the document identifies the date of publication or the date the document was accessed and printed, as well as its source (*e.g.,* URL). *Safer Inc. v. OMS Invs., Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010). The purpose of the *Safer* expansion of the use of notices of reliance was intended to expedite and facilitate the presentation and evaluation of evidence that is readily available to the public through the Internet.

Turning to the documents applicant submitted by her notice of reliance, namely:

1. Applicant's Exhibit A is the Network Solutions "Whois" printout for the domain name BEAUTV.com.[22] It is not clear whether this document originated

---

[22] Applicant's notice of reliance Exhibit A (TTABVue 28, p. 6).

from the Internet but, if it did, it does not meet the requirements set forth in *Safer* because the printout does not include the URL or date when it was printed. In any case, even if the "Whois" printout were admitted into evidence, it does not show use of **BeauTV** as a trademark in commerce for the services identified in applicant's application;

2.      Applicant's Exhibit B is the Network Solutions invoice for the domain name BEAUTV.com. An invoice is not admissible through a notice of reliance because it is not a printed publication in general circulation. Even if the invoice were admissible, it also does not show trademark use of the **BeauTV** mark;[23]

3.      Applicant's Exhibit C is an InfoQuest Internet Business Solutions summary of charges.[24] It displays applicant's account information accessed through a password through which the user logs in. In addition, the web page indicates that the user may "update security settings." Although it is printed from the Internet and bears both a URL and print date, as required by *Safer*, it is a document personal to applicant and not available to the general public. Accordingly, it is not the type of document that is admissible through a notice of reliance. In any event, it does not refer to **BeauTV**, it does not show use of the mark **BeauTV**, and it does not show that applicant paid that Internet service provider for hosting a website related to **BeauTV**;

---

[23] Applicant's notice of reliance Exhibit B (TTABVue 28, p. 8).

[24] Applicant's notice of reliance Exhibit C (TTABVue 28, pp. 10-13).

4. Applicant's Exhibit G is a copy of applicant's certificate of incorporation for Beautv, Inc. Although admissible as an official record under the notice of reliance procedure, it does not show use of the mark **BeauTV**;[25]

5. Applicant's Exhibits H through L are invoices for the annual registration fee for applicant's corporation Beautv, Inc.[26] Exhibits I, K and L are Internet documents that bear a URL and print date. However, like the invoices noted in No. 3 *supra*, they are personal to applicant, not available to the general public and, therefore, not the type of document admissible through a notice of reliance pursuant to *Safer*. Exhibits H and J are merely invoices and are not admissible through a notice of reliance. In any event, the documents have no probative value because they do not show use of the mark **BeauTV**;

6. Applicant's Exhibit M comprises two letters to applicant from Tommy Hilfiger's and Elizabeth Arden's public relations agencies and a letter from Tuff Scentence Inc.[27] Correspondence is not admissible through a notice of reliance because it does not constitute printed publications in general circulation. Even if they were admissible, they do not show use of the mark **BeauTV;**

7. Exhibits and O and Q are press releases or purported press releases, some dated August and September 1999.[28] In pre-*Safer* decisions, the Board has held that press releases are not admissible through a notice of reliance. *See Hard*

---

[25] Applicant's notice of reliance Exhibit G (TTABVue 28, p. 22).

[26] Applicant's notice of reliance Exhibit H – L (TTABVue 28, pp. 24-34).

[27] Applicant's notice of reliance Exhibit M (TTABVue 28, pp. 36-40).

[28] Applicant's notice of reliance Exhibits O and Q (TTABVue 28, pp. 57-60 and 66-70).

*Rock Café Licensing Corp. v. Elsea,* 48 USPQ2d 1400, 1403 (TTAB 1998); *Colt Industries Operating Corp. v. Olivetti Controllo Nuermico S.p.A,* 221 USPQ 73, 74 n.2 (TTAB 1983). Under *Safer,* press releases that have been posted on the Internet and have thereby become publicly available may be introduced by notice of reliance, but the press releases submitted by applicant have not been shown to be of this type. Even if they were admissible, they do not show use of the mark **BeauTV**; and

8. Applicant's Exhibit P appears to be excerpts from the Beautv.com website.[29] However, the only reference to **BeauTV** is the copyright notice and the URL, neither of which shows trademark use of **BeauTV**. If a mark is depicted as part of a URL, to constitute trademark use, it must be more than merely an informational indication of the domain name address used to access a website. *See In re Roberts,* 87 USPQ2d 1474, 1479 (TTAB 2008) (**irestmycase** did not function as a mark for legal services where it was used only as part of an address by means of which one could reach applicant's website); *In re Eilberg,* 49 USPQ2d 1955, 1957 (TTAB 1998). With respect to the use of **BeauTV** in the copyright notice, at best it creates the impression that the designation is a trade (company) name, but that by itself is not trademark use.

Opposer argues that "[a]pplicant has consistently failed to support her claim that the mark was in use at the time she filed the application. Applicant has not established a single instance of the use of the **BEAUTV** mark in commerce in the United States. Applicant has failed to introduce any evidence to show that she

---

[29] Applicant's notice of reliance Exhibits P (TTABVue 28, pp. 61-65).

rendered any of the services listed in the application in connection with the **BEAUTV** mark when the application was filed."[30]

Applicant, on the other hand, argues that her "mark has been clearly and prominently displayed on the www.beautv.com web site since inception" and that she "was continuously using mark [sic] to provide information about beauty, and has been paying all fees associated with **BEAUTV** mark, corporate entity, and related delivery channels since 1999."[31] The problem with applicant's argument is that it is not supported by any admissible and probative testimony or evidence. In response to opposer's discovery requests, applicant produced nothing to show her use of the mark **BeauTV** for "providing information about beauty." During her own testimony period, applicant did not introduce any evidence or testimony showing use of the mark.

In view of the foregoing, we find that applicant did not use her mark **BeauTV** for "providing information about beauty" at the time she filed her use-based application and, therefore, the application at issue in this proceeding is void *ab initio.*

Although our finding on this ground is a sufficient basis for sustaining the opposition, we also address the ground of likelihood of confusion.

### V. Likelihood of Confusion.

Priority is an element of the likelihood of confusion ground. In this case, because three of opposer's registrations are of record, priority is not an issue as to

---

[30] Opposer's Brief, p. 16 (TTABVue 33, p. 22).

[31] Applicant's Brief p. 20 (TTABVue 34, p. 23).

the marks and the services covered by these registrations. *King Candy Co. v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974). This is true even as to registrations that issued after publication of an application for opposition. *See UMG Recordings Inc. v. O'Rourke*, 92 USPQ2d at 1045 n.12 ("while an opposer that pleads ownership of an application would have to make any subsequently issued registration of record, it would not have to amend its notice of opposition prior to doing so. The pleading of the application would be viewed as having provided sufficient notice to the applicant that the opposer would rely on a registration from the application for its likelihood of confusion claim.").

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the services. *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks"). These factors, and any other relevant *du Pont* factors in the proceeding now before us, will be considered in this decision.

As noted above, opposer made of record only Registration No. 3936977 for the mark **SYNCHRONIZING BEAUTY,** Registration No. 4080802 for the mark

BEAUTY EVERYWHERE and Registration No. 4101422 for the mark **THE BEAUTY CHANNEL.** We focus our analysis on Registration No. 4101422 for the mark **THE BEAUTY CHANNEL** as the mark most similar to applicant's mark; if confusion is likely between that mark and applicant's mark, there is no need for us to consider the likelihood of confusion with **BEAUTY EVERYWHERE** or **SYNCHRONIZING BEAUTY**, because if there is no likelihood of confusion between applicant's mark and **THE BEAUTY CHANNEL**, then there would be no likelihood of confusion with **BEAUTY EVERYWHERE** or **SYNCHRONIZING BEAUTY**. *See, e.g., In re Max Cap. Group Ltd.*, 93 USPQ2d 1243, 1245 (TTAB 2010).

A.  The similarity or dissimilarity and nature of the services described in the application and opposer's registrations.

Applicant is seeking to register her mark for "providing information about beauty."

Opposer's Registration No. 4101422 for the mark **THE BEAUTY CHANNEL** is registered for the following services (emphasis added):

> ***Providing audio-visual information in the fields of beauty***, salon services, hair, nails, makeup, facials, spa services and treatments, hair loss and treatments, waxing, and electrolysis, lasers, cosmetic surgery, health, nutrition and anti-aging treatments via electronic communications networks, mobile devices and networks, or device-to-device communications; ***providing information online relating to beauty***, salon services, hair, nails, makeup, facials, spa services and treatments, hair loss and treatments, waxing, and electrolysis, lasers, cosmetic surgery, health, nutrition and anti-aging treatments via electronic communications networks, mobile devices and networks, or device-to-device

communications; ***providing a web site featuring*** videos, images, and other audiovisual or multimedia ***materials featuring information in the fields of beauty***, salon services, hair, nails, makeup, facials, spa services and treatments, hair loss and treatments, waxing, and electrolysis, lasers, cosmetic surgery, fashion, health, nutrition and anti-aging treatments; ***providing*** reviews, commentary, and other ***information relating to beauty***, salon services, hair, nails, makeup, facials, spa services and treatments, hair loss and treatments, waxing, and electrolysis, lasers, cosmetic surgery, health, nutrition and anti-aging treatments via electronic communications networks, mobile devices and networks, or device-to-device communication.

Because applicant's identification of services is unrestricted, applicant's services of "providing information about beauty" encompass opposer's online services of providing information about beauty.

B.  The established, likely-to-continue channels of trade and classes of consumers.

Because applicant's services encompass opposer's services, we must presume that the channels of trade and classes of purchasers are the same. *See Am. Lebanese Syrian Associated Charities Inc. v. Child Health Res. Inst.,* 101 USPQ2d 1022, 1028 (TTAB 2011); *In re Smith & Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be presumed to travel in the same channels of trade, and be sold to the same class of purchasers."). *See also In re Viterra Inc.,* 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (even though there was no evidence regarding channels of trade and classes of consumers, the Board was entitled to rely on this legal presumption in determining likelihood of confusion).

C.    The similarity or dissimilarity of the marks in their entireties in terms of their appearance, sound, connotation and commercial impression.

We now turn to the *du Pont* likelihood of confusion factor focusing on the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *In re E. I. du Pont de Nemours & Co.,* 177 USPQ at 567. In a particular case, any one of these means of comparison may be critical in finding the marks to be similar. *In re White Swan Ltd.,* 8 USPQ2d 1534, 1535 (TTAB 1988); *In re Lamson Oil Co.,* 6 USPQ2d 1041, 1042 (TTAB 1987). In comparing the marks, we are mindful that "[w]hen marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines." *Century 21 Real Est. Corp. v. Century Life of Am.,* 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992); *Jansen Enters. Inc. v. Rind,* 85 USPQ2d 1104, 1108 (TTAB 2007); *Schering-Plough HealthCare Prods. Inc. v. Ing-Jing Huang,* 84 USPQ2d 1323, 1325 (TTAB 2007).

The test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression so that confusion as to the source of the goods or services offered under the respective marks is likely to result. *San Fernando Elec. Mfg. Co. v. JFD Elecs. Components Corp.,* 565 F.2d 683, 196 USPQ 1, 3 (CCPA 1977); *Spoons Rests. Inc. v. Morrison Inc.,* 23 USPQ2d 1735, 1741 (TTAB 1991), *aff'd unpublished,* No. 92-1086 (Fed. Cir. June 5, 1992). The proper focus is on the recollection of the average customer, who retains a general rather than specific impression of the marks. *Winnebago Indus., Inc. v. Oliver & Winston,*

*Inc.,* 207 USPQ 335, 344 (TTAB 1980); *Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106, 108 (TTAB 1975). Since the services involve providing information about beauty, the average customer must be considered to be an ordinary member of the general public.

Applicant's mark is **BeauTV** and opposer's mark is **THE BEAUTY CHANNEL**. There is, as we have frequently stated, no correct pronunciation for a trademark that is coined or unusual. *Edwards Lifesciences Corp. v. VigiLanz Corp.,* 94 USPQ2d 1399, 1409 (TTAB 2010). Given applicant's services, consumers would likely pronounce applicant's mark "byoo´ tē vee" rather than "bō tē vē," because the services concern beauty. Therefore consumers would likely understand the mark to represent a "telescoped" form of "BEAUTY TV." "TV" is the abbreviation for "television," which is defined as "the broadcasting of a still or moving image via radiowaves [sic] to receivers that project an image on a picture tube."[32] "Channel" is defined as, *inter alia,* "a frequency band of sufficient width for one- or two-way communication from or to a transmitter used for television, radio, CB radio, telephone, or telegraph communication."[33] In both marks TV and CHANNEL have a similar significance. Accordingly, viewing the marks in their entireties, we find that consumers will perceive the marks **BeauTV** and **THE BEAUTY CHANNEL** as having the same meaning and engendering the same commercial impression.

---

[32] THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (UNABRIDGED), p. 1953 (2nd ed. 1987). The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.,* 213 USPQ 594 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

[33] THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (UNABRIDGED), p. 345.

We find that the similarities in the meaning and commercial impression engendered by the marks outweigh any specific differences in the appearance and sound of the marks that might be apparent upon a side-by-side comparison of the marks. Thus, the marks are similar.

D.   Balancing the factors.

Because the marks are similar, and because the services are in part identical and therefore are presumed to travel in the same channels of trade and are sold to the same classes of consumers, we find that applicant's mark **BeauTV** for "providing information about beauty" is likely to cause confusion with opposer's mark **THE BEAUTY CHANNEL** for providing audio-visual information in the field of beauty, providing information online relating to beauty, providing a web site featuring videos, images, and other audiovisual or multimedia materials featuring information in the field of beauty and providing reviews, commentary, and other information relating to beauty.

**Decision**:   The opposition is sustained on both the ground that the application is void *ab initio* on the basis of nonuse, and the ground of likelihood of confusion.